No. 46,135

STATE OF KANSAS, *Appellee*, v. SAMUEL LOTT, SR., *Appellant*.

(485 P. 2d 1314)

Opinion filed June 12, 1971.

*Ray Hodge*, of Wichita, argued the cause and was on the brief for the appellant.

*Richard K. Hollingsworth*, Deputy County Attorney, argued the cause, and *Vern Miller*, Attorney General, *Keith Sanborn*, County Attorney, and *Edward G. Collister, Jr.*, Assistant Attorney General, were with him on the brief for the appellee.

The opinion of the court was delivered by

KAUL, J.: Samuel Lott, Sr. (defendant-appellant) appeals from a conviction by a jury of murder in the second degree.

The principal contention on appeal is that the trial court erred in refusing to instruct the jury on lesser included offenses.

The defendant claims there is sufficient evidence that the shooting occurred in the heat of passion to justify an instruction on manslaughter. The state's theory is that defendant either commit-

ted murder in the second degree or acted in self-defense and committed no crime.

The state's evidence consisted of the testimony of four witnesses —each of whom gave essentially the same description of the events leading up to the shooting.

On the afternoon of February 7, 1970, a group of people were drinking Scotch whiskey and listening to music in defendant's home at 1432 Wabash, Wichita. The assemblage consisted of neighbors and acquaintances of defendant. At the time of the shooting, in addition to defendant and his daughter, Lee Pearl Lott, those present were John Henry Straughter, the victim; his father, Isaah Straughter; Shirley Mae Curtis, a next door neighbor; Joy Ann Lee, a friend of Lee Pearl Lott; and George Edward Howard, apparently a friend of the deceased.

John Henry Straughter was one of the last to arrive. He soon fell asleep in a chair. When Lee Pearl Lott attempted to awaken John Henry she was told by her father (defendant) to get away from him and go back to her bedroom. The state's witnesses testified that John Henry Straughter was awakening and attempting to get out of his chair when he was shot once or twice by defendant. Defendant shot Straughter again after he had risen from the chair. Finally Straughter staggered out through the front door and collapsed on the front yard. He was taken to the hospital where he died the same day.

Two officers of the Wichita Police Department arrived at the Lott residence soon after the shooting. They took a pistol from defendant which was later determined to be the pistol from which the fatal shot was fired.

Defendant's evidence depicted a different version of the affair. Defendant and his daughter (Lee Pearl Lott) testified that defendant requested John Henry Straughter to leave or the police would be called, that Straughter then came toward defendant "as a prize fighter" with his "dukes" up. Defendant retreated to the bedroom to telephone the police; he was followed by Straughter, defendant got the pistol from a table near the bed. Defendant testified he first fired twice to scare Straughter but only made him angrier. The defendant then fired at Straughter but did not know how many times he hit him.

The trial court fully instructed the jury on murder in the second degree and self-defense. Defendant objected on the grounds the

jury was not instructed on first, third and fourth degree manslaughter.

Instructions in a criminal prosecution are to be confined to the issues in the case as determined by the charge in the information and the evidence adduced at the trial. Failure to instruct on some lesser degree of the crime charged is not ground for reversal if the evidence at the trial excludes a theory of guilt on the lesser offense. (*State v. McDermott*, 202 Kan. 399, 449 P. 2d 545, cert. den. 396 U. S. 912, 24 L. Ed. 2d 187, 90 S. Ct. 226; *State v. Hockett*, 172 Kan. 1, 238 P. 2d 539; and *State v. Linville*, 148 Kan. 142, 79 P. 2d 869.)

The abstract clearly shows the case was tried by the state on the theory of homicide with malice, but not with premeditation while the theory of defendant was solely self-defense. The jury chose to believe the state's version. There was no evidence to support a theory of manslaughter in any degree. The defendant's testimony was that he was acting in self-defense rather than because of provocation to the degree necessary to constitute "heat of passion" as characterized by this court.

Defendant's description of the shooting is as follows:

"ANSWER: So after Mr. John Straughter come in—that was a few peoples who heard the conversation due to the fact I didn't expose his business so after I told—after Mr. John told me what he wanted, I told him to get up and get out and he—John got up and wheel on me as a prize fighter.

"QUESTION: Let me stop you right there, Mr. Lott. What do you mean when he wheeled on you?

"ANSWER: Well, he came up with his dukes and was down in a position to fight was when he came after me.

"QUESTION: He was a younger man?

"ANSWER: The man was about half as old as I am. He was—I would give him 23, 24 years of age.

"QUESTION: Okay, Please go on. What did you do then?

"ANSWER: And I run backwards. Mr. Straughter and I runned in the same direction. If you allow me to do the same thing. Right here is where I was talking to Mr. Straughter. Right here is where he was sitting. He came over after me, clear over to this divan here which is a day bed and by that time I was in the direction and I grabbed the telephone and told him I would call the police and they could get him out. He cursed me and told me that I wouldn't call no police and so he made a break for me when I went to dial the phone—

"THE COURT: Sir, can you turn around this way a little bit more so we can hear you?

"ANSWER: (witness complies)

"THE COURT: Thank you.

"ANSWER: I went to dial the phone. I reach the—got the gun and I throwed it on Mr. Straughter and it seems to be that all the testimony sure are going to be different. Mr. Straughter didn't regard the gun. I fired two shots. The gun was knocked down by my daughter when she struck the table. The table was betwixt Mr. Straughter and I. The first two bullets went straight due to the fact that the gun was knocked off balance. I gave two slightly wounds to Mr. Straughter as I remember it and Mr. Straughter was still on his feet. Now, the gun was being fired in the direction from here to the front room which everyone has said. You can figure it out for yourself. Mr. Straughter fell right here along by the divan. After the shot, Mr. Straughter still had a chance to leave. He didn't. Well, I had no other choice but to try to hurt Mr. Straughter and to keep him from hurting me so I then fired a shot which I thought would wound him in the hip but it was a little too high. I then goes on and finished the call to the police, the call for the police."

The same issue was presented in *State v. McDermott,* supra, which we believe to be controlling here. In *McDermott* we said:

"This court has said the term 'heat of passion' includes an emotional state of mind characterized by anger, rage, hatred, furious resentment or terror. (*State v. Linville,* supra; *State v. Jones,* 185 Kan. 235, 241 P. 2d 1042.) However, in order for a defendant to be entitled to a reduced charge because he acted in the heat of passion his emotional state of mind must exist at the time of the act and it must have arisen from circumstances constituting sufficient provocation." (p. 402.)

In the instant case, the defendant's own testimony refutes any suggestion that he acted in the heat of passion. When defendant testified he fired a shot directly into Straughter's body, after Straughter had fallen by the divan; and further that the firing of that shot was done purposely, then there can be no doubt defendant was in control of his actions and his reason at the time.

The issue whether defendant's actions constituted second degree murder or self-defense, as explicitly framed by the evidence, was properly submitted to the jury.

Although not argued on appeal defendant submits one further contention in his brief. Defendant claims a recorded statement of George Howard was erroneously admitted into evidence. At the trial defendant first objected but later agreed the statement was properly admitted under K. S. A. 60-460 (*a*) which reads:

"(*a*) *Previous statements of persons present.* A statement previously made by a person who is present at the hearing and available for cross-examination with respect to the statement and its subject matter, provided the statement would be admissible if made by declarant while testifying as a witness:"

The witness (George Howard) was present in the courtroom but

apparently he refused to testify for the state at the time of trial. He did testify for defendant and was examined and cross-examined. It appears that Howard had become a "turncoat" witness, a circumstance which 60-460 (*a*) is intended to meet.

In the 1970 Cumulative Supplement to his commentary, Judge Gard points out the important categories in which 60-460 (*a*) is intended to operate with major significance as an exception to the rule against hearsay. One category specifically enumerated is:

"(2) the 'turncoat' witness situations where the prior statement may be received as substantive evidence and not merely as impeachment; . . ."

(Gard, Kansas Code of Civil Procedure Annotated, 1970 Cumulative Supplement, § 60-460 [*a*], p. 87.)

Finding no error, the judgment is affirmed.