No. 47,735

State of Kansas, *Appellee,* v. Jon Richard Deffenbaugh, *Appellant.*

(536 P. 2d 1030)

Opinion filed June 14, 1975.

*Edward A. McConwell,* of Shawnee Mission, argued the cause, and was on the brief for the appellant.

*Nick A. Tomasic,* district attorney, argued the cause, and *Curt T. Schneider,* attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

Prager, J.: This is a direct appeal in a criminal action in which the defendant was convicted of aggravated robbery under the provisions of K. S. A. 1972 Supp. 21-3427. The charge arose as the result of an armed robbery of the K. U. Medical Center Pharmacy in Wyandotte county on April 11, 1973. The robbers were two unmasked young men armed with guns who forcibly compelled the pharmacist on duty to turn over to them a quantity of narcotics. Within a week after the robbery the Johnson county sheriff's office received information as to the location of the stolen drugs. A search warrant was obtained for defendant's residence. On execution of the search warrant drugs identified as those taken in the robbery were found in the possession of the defendant. Following his conviction after a jury trial the defendant-appellant, Jon Richard Deffenbaugh, has appealed to this court claiming trial errors.

The defendant's first point on this appeal is that the trial court erred in overruling the defendant's motion to suppress evidence consisting of a box containing narcotic drugs obtained in the search conducted at the defendant's place of residence on April 18, 1973. This is the identical point raised in *State v. Deffenbaugh,* 216 Kan.

593, 533 P. 2d 1328 where we held the same evidence admissible in a criminal proceeding filed in Johnson county charging defendant with the unlawful possession of the same drugs. The factual circumstances concerning the sources of information of the police authorities in regard to the location of the drugs and the issuance and execution of the search warrant are set forth in full in that opinion. In the Johnson county case the defendant's objection to the evidence was that the information obtained by the police and provided the magistrate as a basis for the search was the product of an illegal search of the defendant's motor vehicle and his person at the police station and as a result thereof the search warrant and the evidence obtained thereby were tainted by the "fruit of the poisonous tree doctrine" and therefore the evidence obtained on execution of the search warrant on April 18 should have been suppressed. We do not deem it necessary to review in detail here the factual circumstances and the reasons for our decision in the prior action. We have considered the additional authorities cited by counsel at oral argument in this case and have concluded that they do not justify any change from our prior determination of the issues presented. We, therefore, reject the defendant's first point of claimed error for the reasons fully set forth in our opinion in *State v. Deffenbaugh*, supra.

The defendant's second and fourth points on this appeal relate to the identification of the defendant by the pharmacist who was robbed at gunpoint at the K. U. Medical Center. The defendant moved to suppress the pharmacist's testimony which identified the defendant at a police lineup and again in the courtroom at the trial of the case. The factual circumstances surrounding the identification are undisputed and are essentially as follows: Following the search of the defendant's residence and the discovery of the drugs in his possession on April 18, 1973, he was arrested and taken to the Johnson county courthouse. The pharmacist, Jeff Menzie, was called to the courthouse to view a lineup of possible suspects who might be involved in the medical center robbery. Menzie testified that he entered the Johnson county courthouse, got off the elevator, and immediately observed in the crowd an individual who was involved in the robbery. He immediately informed a police officer he had seen the man who committed the robbery and identified the defendant as the one who did it. Menzie further testified that regard to a witness whose credibility was genuinely in doubt. the provisions of K. S. A. 60-422, an adjudication of delinquency

distinguished him from the four or five other individuals who were in the hall at the time. Following this encounter a lineup was conducted by the police. There Menzie again identified the defendant Deffenbaugh as the robber. At the trial Menzie positively identified the defendant in the courtroom. The evidence showed that Menzie had ample opportunity to view the perpetrator of the crime at the scene. The room was extremely well lighted, neither of the robbers wore a mask. The defendant faced Menzie for a period of approximately 30 seconds during which time defendant made no effort whatsoever to conceal his identity. Menzie had no hesitancy at all in identifying the defendant as one of the persons who had robbed the pharmacy.

Prior to trial the defendant filed a motion to suppress the identification by Menzie claiming in substance that the conduct of the police in allowing the defendant to be observed and identified by Menzie prior to the lineup was a violation of the defendant's rights under the federal and state constitutions. We are, of course, concerned in any case where a question is raised that the identification of the accused was unnecessarily suggestive and conducive to an irreparable mistaken identification. Such a procedure constitutes a denial of due process of law. (*Neil v. Biggers,* 409 U. S. 188, 34 L. Ed. 2d 401, 93 S. Ct. 375.) In *Neil* the Supreme Court of the United States held that whether an accused's pretrial confrontation by an eyewitness to a crime is so unnecessarily suggestive and conducive to irreparable mistaken identification that the accused is denied due process of law must be determined from the totality of the circumstances. In the opinion in *Neil* the court stated that the factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness's degree of attention, the accuracy of the witness's prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. When we apply these factors to the totality of circumstances in the present case it is our judgment that the identification of the defendant as the robber by Menzie was admissible. The witness had ample opportunity to view the robbers, neither of whom wore masks or made any attempt to conceal their faces. The witness's attention was directed toward the defendant for a full 30 seconds and the lighting in the pharmacy was very good. The identification of the defendant as the robber by Menzie as he entered the hall of the courthouse was

spontaneous. Menzie had no hesitancy whatsoever in identifying the defendant. The positive identification by Menzie was made within a period of a week after the robbery occurred. In regard to the confrontation between Menzie and defendant in the hall of the courthouse prior to the lineup the evidence is undisputed that it occurred through mere chance or accident. In *State v. Kearns,* 211 Kan. 158, 505 P. 2d 676, we held that the fact a witness may have inadvertently observed the defendant at the police station within a few hours of his arrest does not render inadmissible an independent in-court identification based primarily on the witness's observations at the scene of the crime. On the record before us it is clear to us that the trial court did not err in overruling the defendant's motion to suppress the identification testimony of the witness Jeff Menzie.

The defendant next maintains that the court erred in admitting exhibits 1 through 6 into evidence over his objection. Exhibits 2, 3, and 4 consisted of the blue box and the narcotics taken from the defendant's residence when the search warrant was executed. Exhibit 1 was an inventory of items taken from the pharmacy. Exhibits 5 and 6 pertained to the persons who were in the lineup and the record of the lineup as it occurred. Each of the exhibits was identified and supported by the oral testimony of witnesses. They were relevant and we cannot say that the trial court erred in refusing to exclude them.

The defendant's final point is that the trial court erred in refusing to permit defense counsel to examine the juvenile records of Kirk Hiatt, a prosecution witness. Kirk Hiatt was a participant in the robbery but remained in the getaway car and was not present in the pharmacy at the time of the actual holdup. Kirk Hiatt was also the informant who provided the information to the police authorities which resulted in the search of the defendant's residence where the narcotics were discovered. Kirk Hiatt testified as a witness for the state against the defendant at the trial. At a pretrial hearing the defendant sought to examine Hiatt's juvenile records for the purpose of impeaching his credibility and to show police threats to obtain information from him. In our recent case of *State v. Wilkins,* 215 Kan. 145, 523 P. 2d 728, we held that this state's policy interest in protecting the confidentiality of a juvenile offender's record as expressed in K. S. A. 38-801, *et seq.,* must yield to the right of effective cross-examination to test the credibility of a witness by reason of Section 10, Bill of Rights, Constitution of the State of Kansas and the Sixth Amendment to the Constitution of

the United States. We held that the constitutional right of confrontation of witnesses means more than being allowed to confront the witness physically for it includes the right of effective cross-examination where the credibility of a witness can be subjected to exploration to examine the weight to be given to his testimony. To the same effect is *Davis v. Alaska,* 415 U. S. 308, 39 L. Ed. 2d 347, 94 S. Ct. 1105. In our judgment the trial court was in error in denying to defendant the right to examine the juvenile records of the witness Kirk Hiatt. On the basis of the entire record, however, we find that such action by the trial court did not constitute prejudicial error in this case. As pointed out above Kirk Hiatt testified as a witness for the state at the trial. In the course of his testimony he admitted that he was a drug user and a drug seller. He admitted that he was an active participant in the robbery of the K. U. Medical Center and that he had been granted immunity from prosecution by the state. It was brought out in the course of the trial that Hiatt had been a paid informant of the Johnson county law enforcement authorities. Suffice it to say Hiatt's involvement in criminal activities and a possible motive to testify falsely to save his skin was fully brought home to the jury. Furthermore the evidence of the defendant's guilt was overwhelming. The narcotics which were taken in the course of the robbery of the K. U. Medical Center were found in the defendant's possession within a week after the robbery occurred. No evidence was offered by the defense to explain how defendant may have acquired them. The victim of the robbery, Jeff Menzie, made a positive unwavering identification of the defendant.

We cannot accept the argument of the state that juvenile records, even if discoverable, would be inadmissible since they do not constitute convictions of crime but rather adjudications of delinquency. In support of this position the state relies on *Paige v. Gaffney,* 207 Kan. 170, 483 P. 2d 494, where we held that an adjudication of delinquency in juvenile court does not constitute a felony for purposes of invoking the habitual criminal act. The decision in *Paige* has no application where a defendant in a criminal case seeks to impeach the credibility of a witness. In that situation the purpose of introducing evidence of prior adjudications of delinquency amounting to a felony is not to punish the witness for having a juvenile record but is to guarantee the defendant's right of confrontation. If such evidence were not permitted, a person charged with crime could conceivably have no method of impeachment with

regard to a witness whose credibility was genuinely in doubt. Since specific instances of a witness's misconduct are inadmissible for the purpose of attacking the credibility of a witness under the provisions of K. S. A. 60-422, an adjudication of delinquency in the juvenile court might well be the only tool available for impeaching the credibility of a witness. We hold that adjudications of delinquency in juvenile court involving dishonesty or false statement constitute convictions of crime within the meaning of K. S. A. 60-421 and are admissible for the purpose of impeaching the credibility of a witness. The same guidelines as to what constitutes "dishonesty" applicable to felonies under K. S. A. 60-421 should be followed with regard to juvenile records. Under all of these circumstances it is our judgment that the refusal of the trial court to permit defense counsel to examine Kirk Hiatt's juvenile records did not prejudice the right of the defendant to a fair trial.

For the reasons set forth above the judgment of the district court is affirmed.

FROMME, J., not participating.