No. 48,359

STATE OF KANSAS, *Appellee,* v. DONALD F. FISHER, *Appellant*

(563 P.2d 1012)

Opinion filed April 9, 1977.

*William D. Mize,* District Public Defender, of Salina, argued the cause and was on the brief for the appellant.

*William Rex Lorson,* Saline County Attorney, of Salina, argued the cause and *Curt T. Schneider,* Attorney General, was with him on the brief for the appellee.

The opinion of the court was delivered by

FATZER, C. J.: This is an appeal from a conviction by jury of the crime of indecent liberties with a child and aggravated sodomy, contrary to the provisions of K.S.A. 21-3503, as amended, and K.S.A. 21-3506, respectively.

The complainant, Carla Davis, is the stepdaughter of the defendant-appellant, Donald F. Fisher. At the time of the alleged offenses, she was 11 years old. The offenses for which the appellant was convicted are alleged to have occurred on July 12, 1975, and August 10, 1975. The information was filed on September 26, 1975. Trial was had to a jury on October 15, 1975; a verdict of guilty was returned, and the appellant was sentenced on October 31, 1975. This appeal followed.

On the evening of August 10, 1975, Carla and her mother, Mrs. Adelie Fisher, came to the Saline County Sheriff's Office about 9:30 p.m. Deputy James Preston talked with Carla for about an hour and a half. In the course of their conversation, Carla told of several instances in which her stepfather had sexually molested her. The appellant was arrested the following day and charged with two crimes based on what Carla told the deputy.

At trial, Carla was the state's first witness. She testified that the story she told the deputy on August 10, 1975, was a lie—that the appellant did not do the things she said he did.

After some thirty minutes of direct examination, the court asked counsel to approach the bench. There followed a lengthy discussion, first out of the jury's hearing at the bench, then in chambers. The court stated Carla was obviously a hostile witness, and it had expected to have been faced with a tender of exception to the hearsay rule. The parties had apparently anticipated the complaining witness might change her story on the stand because they had filed briefs on the hearsay question prior to trial.

After extended discussion, the court determined Carla Davis and Mrs. Fisher were turncoat witnesses and that, as such, it was proper to let other witnesses testify as to what Carla and Mrs. Fisher had told them, as an exception to the hearsay rule. In

accordance with that ruling, Deputy Preston was permitted to testify as to the story Carla had related to him during the evening of August 10, 1975, as to the two offenses for which defendant was charged. Another deputy, Ron Lister, was later permitted to testify about an incident involving Carla and the appellant that Mrs. Fisher had related to him on August 10, 1975. Mrs. Fisher was present but did not testify at the trial.

The appellant contends the district court committed reversible error by permitting hearsay statements of Carla Davis and Mrs. Fisher to be admitted into evidence under K.S.A. 60-460(a) through the testimony of the two sheriff's deputies. The first prong of the appellant's argument is that the district court's ruling was an abuse of discretion.

K.S.A. 60-460 provides:

"Evidence of a statement which is made other than by a witness while testifying at the hearing offered to prove the truth of the matter stated is hearsay evidence and inadmissible except:

"(a) *Previous statements of persons present.* A statement previously made by a person who is present at the hearing and available for cross-examination with respect to the statement and its subject matter, provided the statement would be admissible if made by declarant while testifying as a witness; . . ."

This exception to the hearsay rule, if literally interpreted, could largely circumvent the general principle that the testimony of witnesses at trial shall be taken orally in open court. K.S.A. 60-243; Fed. R. Crim. P. 26. If the exception were not applied discriminately, the state might, for example, be tempted to present its case at a preliminary hearing when the defense often is not well prepared to cross-examine effectively, and then simply introduce a transcript at trial rather than call the witnesses.

Exercise of judicial restraint in allowing admission of evidence under 60-460 (*a*) is implicit in this exception to the hearsay rule. This has not gone unnoticed by Judge Gard:

". . . [This exception] could be subject to abuse if it were not for the discretionary power of the trial court to separate the grain from the chaff and control the admission of evidence of out-of-court statements admissible only under this exception, and reject it if better evidence is available and no good purpose is served by receiving it." S. Gard, Kansas Code of Civil Procedure 465 (1963).

The exception has been criticized as increasing the pressures to secure out-of-court statements, facilitating the manufacture or shading of evidence, raising the possibility a criminal defendant

may be convicted on the basis of an out-of-court statement, and because cross-examination is inadequate in such a situation. R. Fowkes and W. Harvey, 4 Vernon's Kansas Statutes Annotated, Code of Civil Procedure, 416 (1965).

In the instant case, the district court carefully considered the question before making its ruling. It had the benefit of trial briefs and oral arguments on the point. The basis for the district court's ruling is clear:

"I think in this case before you can use the hearsay rule, if you don't have a turncoat witness the Court isn't going to let you use the exception. If you have a turncoat witness I think it is appropriate for the Court to permit it. I think it boils down to that. . . ."

We have no dispute with the district court's finding that Carla was a turncoat witness. The court observed some thirty minutes of Carla's direct examination; Carla was evasive, hostile and denied the truthfulness of her prior statements which were the basis for the charge against the accused. The state's tender of evidence in chambers was to the effect that Carla's prior statements were in complete contradiction to her testimony at trial and at the preliminary hearing. This was the traditional turncoat witness situation, and the court did not err in ruling Carla's prior hearsay statements were admissible as substantive evidence under 60-460(*a*). *See, State v. Lott,* 207 Kan. 602, 485 P.2d 1314; S. Gard, Kansas Code of Civil Procedure 466 (1963).

However, it was an abuse of discretion for the district court to allow hearsay statements of Mrs. Fisher to be admitted under 60-460 (*a*) based on a finding she was a turncoat witness. Mrs. Fisher was available to testify at trial, but was never called. The state's tender of proof was that the testimony Mrs. Fisher would give at trial would be completely contradictory to her prior statements. This was an insufficient basis for permitting the use of the 60-460 (*a*) exception. It was an abuse of discretion for the district court to find Mrs. Fisher was a turncoat witness without her first testifying contrary to her prior statements.

The second prong of the appellant's argument that the admission of the hearsay statements under K.S.A. 60-460 (*a*) was reversible error is that, under the circumstances of this case, his constitutional right of confrontation was violated.

The course of events at trial has been set out above. Briefly, after Carla testified, the court ruled prior hearsay statements of

Carla and Mrs. Fisher would be admitted under K.S.A. 60-460 (*a*). Thereafter, the hearsay statements were admitted through the testimony of sheriff's deputies. Carla was not recalled for cross-examination. Mrs. Fisher was available at the trial, but was not called to testify by either the state or the defendant.

The Sixth Amendment to the United States Constitution provides in pertinent part:

"In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him. . . ."

The Sixth Amendment's guarantee of the right to confrontation was made applicable to the states through the Fourteenth Amendment in *Pointer v. Texas,* 380 U.S. 400, 13 L. Ed. 2d 923, 85 S. Ct. 1065 (1965).

The Sixth and Fourteenth Amendments grant no greater protection to the accused in this respect than does Section 10 of the Bill of Rights of the Kansas Constitution, which provides in pertinent part:

"In all prosecutions, the accused shall be allowed to . . . meet the witness face to face. . . ."

*See generally State v. Hill,* 189 Kan. 403, 369 P.2d 365, 91 ALR 2d 750.

The United States Supreme Court recently had occasion to consider an argument similar to that raised by the appellant. *California v. Green,* 399 U.S. 149, 26 L. Ed. 2d 489, 90 S.Ct. 1930. The Court in *Green* noted that confrontation has a three-fold purpose:

". . . (1) insures that the witness will give his statements under oath—thus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury; (2) forces the witness to submit to cross-examination, the 'greatest legal engine ever invented for the discovery of truth'; (3) permits the jury that is to decide the defendant's fate to observe the demeanor of the witness in making his statement, thus aiding the jury in assessing his credibility." *Id.* at 158.

The particular vice that gave impetus to the constitutional provision guaranteeing confrontation was:

". . . the practice of trying defendants on 'evidence' which consisted solely of *ex parte* affidavits or depositions secured by the examining magistrates, thus denying the defendant the opportunity to challenge his accuser in a face-to-face encounter in front of the trier of fact." *Id.* at 156.

The *Green* Court concluded that the admission of a declarant's

out-of-court statements did not violate the Confrontation Clause:

". . . as long as the declarant is testifying as a witness and subject to full and effective cross-examination." *Id.* at 158.

Our decisions have recognized the constitutional right of confronting witnesses means more than being allowed to confront a witness physically—it includes the right of effective cross-examination. *State v. Deffenbaugh,* 217 Kan. 469, 536 P.2d 1030; *State v. Wilkins,* 215 Kan. 145, 523 P.2d 728; *State v. Montanez,* 215 Kan. 67, 523 P.2d 410.

In the case at bar, Mrs. Fisher was available in the courtroom, but the state chose not to call her. Defendant could have called her as a defense witness. However, in our view, calling a declarant as a defense witness is no substitute for cross-examining that declarant as a state's witness. Support for this position was aptly stated in Note, *The Supreme Court 1970 Term,* 85 Harv. L. Rev. 1, 195 (1971):

"On cross-examination, the defense has greater freedom in questioning the witness, including the ability to use leading questions. . . . [and] even a direct examination successful from the defendant's perspective is less effective than cross-examination because (1) time will have elapsed since the State introduced the hearsay; (2) the damaging hearsay will have to be repeated during the examination, thereby increasing its impact; and (3) the impeachment will come from the defendant's witness, rather than the State's, so the jury will not be as impressed."

*Hoover v. Beto,* 439 F.2d 913, 924 (5th Cir. 1971), forcefully illustrates the right to "effective cross-examination" is not satisfied by the declarant's mere presence in the courtroom:

"The State did not call Sellars as a witness, and it has failed to meet the requirements for applying California v. Green, *supra.* The inference to be drawn is that the State was apprehensive that Sellars would recant his confession or refuse to testify. The State evidently did not want to be in the position of introducing the confession by way of impeaching or rebutting Sellars' testimony. It preferred to introduce the confession in its case in chief and put the burden of rebuttal on the defense.

"That Sellars was available to be called as a witness does not mitigate the prosecution's misconduct here. The State sought to shift to the defendant the risk of calling Sellars to the stand. To accept the State's argument that the availability of Sellars is the equivalent of putting him on the stand and subjecting him to cross-examination would severely alter the presumption of innocence and the burdens of proof which protect the accused. Hoover's undoubted right to call Sellars as a witness in his behalf cannot be substituted for his Sixth Amendment right to confront Sellars as a witness against him."

As indicated, Carla testified before her hearsay statements were admitted through the testimony of Deputy Preston. The defense counsel could have requested Carla be recalled for further cross-examination after Preston's testimony. The right to recall a witness for further cross-examination lies in the sound discretion of the trial court. *See, State v. Arch,* 98 Kan. 404, 157 Pac. 1198; 98 C.J.S. *Witnesses,* Sec. 371, (1957). The language of K.S.A. 60-460 (*a*), "available for cross-examination with respect to the statement and its subject matter," clearly warrants recalling a witness for cross-examination on his hearsay statement admitted subsequent to his testifying. Whether a witness is actually cross-examined, the fact the defendant has an opportunity to carry out such an inquiry satisfies the confrontation clause. *Pointer v. Texas,* supra; *People v. Green,* 92 Cal. Rptr. 494, 3 Cal. 3rd 981, 479 P.2d 998. Hence, we conclude the admission of Carla's hearsay statements did not amount to a denial of the appellant's right to confrontation.

Our conclusion is different with respect to the hearsay statements of Mrs. Fisher. For the reasons set forth in the foregoing portions of the opinion, we hold that under the circumstances of this case, admission of Mrs. Fisher's hearsay statements violated the appellant's right to confrontation. In our view, for the declarant to be subject to full and effective cross-examination by the defendant, he must be called to testify by the state.

For reasons of policy and fairness, and to ensure the right of confrontation is not abridged, we hold that in a criminal proceeding the declarant must testify at trial before hearsay evidence may be admitted under K.S.A. 60-460 (*a*).

The appellant next contends it was reversible error for the court to permit the prosecutor to elicit, during the state's case-in-chief and cross-examination of the appellant, evidence of the appellant's silence at the time of his arrest after he had been advised of his right to remain silent.

Deputy Lister arrested the appellant on August 11, 1975. In describing the arrest, the following testimony occurred:

"Q. Did you ever question the defendant about what he was being arrested for?

"A. Yes. He asked me what he was being arrested for and I advised him of his rights *and asked him if he wanted to answer any questions. He said, 'No, I understand my rights and I don't want to talk to you without an attorney present.'* I didn't ask him any other questions.

"Q. Did you ask him why he had ran when he saw you?
"A. Yes, he advised me that he wasn't running, that he was going over to the neighbor's house." (emphasis supplied)

The appellant testified in his own behalf. On cross-examination, the following transpired:

"Q. Did you ever say that you didn't do them? [offenses charged]
"A. Yes, sir.
"Q. *Did you tell Deputy Lister that when he arrested you?*
"A. No, sir. He said anything that I said could be used against me." (emphasis supplied)

The use for impeachment purposes of a defendant's silence at the time of his arrest and after receiving the *Miranda* warnings is constitutionally impermissible. *Doyle v. Ohio,* 426 U. S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240; *State v. Mims,* 220 Kan. 726, 556 P.2d 387. No valid distinction can be made with respect to testimony on direct or cross-examination concerning the accused's silence at the time of his arrest because the potential for prejudice is present in both situations. *United States v. Impson,* 531 F.2d 274 (5th Cir. 1976). However, the appellant made no objection to this testimony at the trial. The state contends that appellant's failure to comply with the contemporaneous objection rule (K.S.A. 60-404) precludes our reviewing this point on appeal.

The contemporaneous objection rule is codified in K.S.A. 60-404:

"A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless there appears of record objection to the evidence timely interposed and so stated as to make clear the specific ground of objection."

In *Baker v. State,* 204 Kan. 607, 464 P.2d 212, it was said:

"The contemporaneous objection rule long adhered to in this state requires timely and specific objection to the admission of evidence in order for the question of admissibility to be considered on appeal. (K.S.A. 60-404.) The rule is a salutary procedural tool serving a legitimate state purpose. (See, *Mize v. State,* 199 Kan. 666, 433 P. 2d 397; *State v. Freeman,* 195 Kan. 561, 408 P. 2d 612, cert. denied, 384 U. S. 1025, 16 L. Ed. 2d 1030, 86 S. Ct. 1981.) By making use of the rule, counsel gives the trial court the opportunity to conduct the trial without using the tainted evidence, and thus avoid possible reversal and a new trial. Furthermore, the rule is practically one of necessity if litigation is ever to be brought to an end." (*Id.* 611)

Failure to comply with the contemporaneous objection rule or some other state procedural requirement may bar a challenge,

even upon federal constitutional grounds, to a conviction in a state court. *Henry v. Mississippi,* 379 U. S. 443, 13 L. Ed. 2d 408, 85 S. Ct. 564. In *State v. Cameron & Bentley,* 216 Kan. 644, 533 P. 2d 1255, we held that the accused had failed to preserve his claim of due process deprivation where no objection to the offending testimony was interposed at trial. Likewise, in *State v. Shepherd,* 213 Kan. 498, 516 P.2d 945, we said that the alleged error of eliciting testimony of the accused's post-arrest silence was not properly before this court where no objection was interposed at trial.

The appellant argues no objection was necessary under the circumstances of this case. In support of this proposition, he points to *State v. Lara,* 88 N.M. 233, 539 P.2d 623; *United States v. Nolan,* 416 F.2d 588 (10th Cir. 1969); and *Minor v. Black,* 527 F.2d 1 (6th Cir. 1975). These decisions can be distinguished from the instant case. *Minor v. Black,* supra, was a federal habeas corpus case. It has long been the rule that even where state procedural grounds bar direct review by appeal to a state or federal appellate court, federal habeas corpus relief is still available to litigate the accused's constitutional claims unless there has been a deliberate bypass of the state procedures. *See Lefkowitz v. Newsome,* 420 U.S. 283, 290 n. 6, 43 L. Ed. 2d 196, 202, 95 S. Ct. 886, 890; *Henry v. Mississippi,* supra; *Fay v. Noia,* 372 U. S. 391, 9 L. Ed. 2d 837, 83 S.Ct. 822; *Baker v. State,* supra. *State v. Lara,* supra, and *United States v. Nolan,* supra, were direct criminal appeals from a state and federal conviction. Both the federal courts and New Mexico have a "plain error" rule. Fed. R. Crim. P. 52 (b); N. M. Stat. Ann. Sec. 20-4-103 (d) (1975 Supp.). Kansas has no such rule.

Because the appellant failed to make timely, specific objections to the testimony he now urges was erroneously admitted, the point is not properly before this court on appeal.

The appellant next contends the district court committed reversible error in permitting the state to introduce evidence of past crimes under K.S.A. 60-455.

In the state's case-in-chief, after Deputy Preston had testified as to what Carla had told him concerning the two acts of the appellant for which he was charged, Deputy Preston was asked if Carla had told him about any other incidents involving her and the appellant. The defendant objected, and there followed a

conference at the bench. The state informed the court it intended to offer evidence of other crimes under the provisions of K.S.A. 60-455, for the purpose of showing the appellant's plan, design, knowledge and intent. The court overruled the defendant's objection, and, before allowing the state to proceed with its evidence, gave the following preliminary instruction:

"Ladies and Gentlemen of the Jury, the testimony just now about to be introduced is to be introduced and to be considered by the jury for only a limited purpose. Now, at the close of trial you will be given complete instructions relative to the law that applies to this case and you will be instructed in detail as to this particular point. But this evidence has to do with other acts and occurrences of a nature which are to be considered by the jury to the extent that you find might be material and bearing on plan, design, knowledge or intent of the defendant and not for any purpose having to do with the guilt or innocence as to the particular acts claimed in the two charges against the defendant. So keep in mind that this will be covered fully in the Court's instructions at the close of trial."

Thereafter, Deputy Preston related three incidents Carla had told him involving herself and the appellant. On three occasions within a year prior to the charged offenses, Carla told of the appellant fondling her while masturbating and making her play with his penis.

While the district court's preliminary instruction was overbroad (knowledge appears neither relevant nor material to the crimes charged), we think the other crimes evidence was properly admitted to show intent, plan and design.

A necessary element of proof of indecent liberties with a child is the specific intent to arouse or satisfy the sexual desires of either or both. The other crimes evidence was probative to show such intent. Further, the three like occurrences in the preceding year reflect an antecedent mental condition that evidentially points to the doing of the acts charged. The occurrences suggest a plan or design directed toward the doing of the crimes charged.

We believe the probative value of the evidence sufficiently outweighed its prejudicial effect so that its admission was proper within the limits of judicial discretion. *See State v. Gonzales,* 217 Kan. 159, 535 P.2d 988; *State v. Hampton,* 215 Kan. 907, 529 P.2d 127; *State v. Masqua,* 210 Kan. 419, 502 P.2d 728.

The appellant's final contention is that the district court committed reversible error in denying his motion for judgment of acquittal at the close of the state's case where the victim of the alleged crimes denied commission of said offenses and the state

did not produce evidence independent of the victim's prior statements to prove the offenses charged.

We do not agree with the contention. The testimony of the deputy as to what was told him by the complaining child was sufficient to sustain a verdict of guilty if believed by the jury. In reviewing the sufficiency of evidence, the function of an appellate court is limited to whether there was a basis in the evidence for a reasonable inference of guilt. *E.g., State v. Helm,* 200 Kan. 147, 151, 434 P.2d 796.

The judgment is reversed with directions to grant a new trial.

PRAGER, J., concurring and dissenting.

I concur with the majority opinion except those portions of the syllabi and opinion dealing with the admission of evidence of prior offenses pursuant to K.S.A. 60-455. The rationale underlying my position is thoroughly set out in my dissent in *State v. Gonzales,* 217 Kan. 159, 535 P. 2d 988. While the crime charged here is not the same as in *Gonzales,* my reasons for the exclusion of such evidence are virtually the same. The majority states "the three like occurrences in the preceding year reflect an *antecedent mental condition* that evidentially points to the doing of the acts charged." (Emphasis supplied.) This is merely another way of saying defendant had a predisposition to commit the crimes charged. Evidence of this sort is strictly prohibited by 60-455 and a long line of case law.

Admission of evidence of prior crimes, unless done with great caution, can have the effect of raising collateral issues, compel the defendant to meet charges not contained in an indictment or information, confuse him in his defense, and divert the jury from the charge immediately before it. The evidence of other offenses should be excluded at the new trial which we have ordered in this case.

MILLER, J., dissenting:

*State v. Jones,* 204 Kan. 719, 466 P. 2d 283, is somewhat similar to the case at hand. Jones was convicted of the statutory rape of a seven-year-old girl. The state's evidence included the testimony of the victim; statements the victim made to her grandmother, which were held admissible under K.S.A. 60-460 (*a*); and the testimony of the attending physician, who examined the victim when she was first brought to the hospital, and who attended her

for approximately one month during her hospitalization. There was irrefutable evidence that a heinous offense had been committed against the person of this small child, and ample testimony to connect Jones with and to convict him of that offense. Jones was sentenced to imprisonment for not less than one nor more than 21 years.

Contrasting that record with this, it is shocking that here we have no medical testimony and *no corroborating evidence whatsoever* to establish (1) that a crime was committed or (2) that Fisher committed it. The victim sustained no physical harm. Fisher was sentenced to be imprisoned for a minimum of 5 years and a maximum of life. His conviction and sentence were based solely on what a small child once said—and now denies.

Where *the only evidence* offered by the state to prove that an offense has been committed and that the defendant committed it is hearsay testimony, admissible only by virtue of K.S.A. 60-460 (*a*), such evidence, standing alone, is insufficient in my judgment to establish guilt beyond a reasonable doubt. It does not form the basis for that reasonable inference of guilt necessary upon appellate review. See *State v. Hornbeak,* 221 Kan. 397, 559 P. 2d 385, Syl. 9.

What the majority holds, in effect, is this: if one citizen tells a peace officer that another has committed a crime, and later retracts the charge, the peace officer's testimony of the initial conversation with the complaining witness is sufficient to prove guilt beyond a reasonable doubt—though there is not one whit of supporting evidence to suggest, let alone prove, that a crime has been committed or that the accused committed it. This is a dangerous precedent and I cannot give countenance to it.

I therefore respectfully dissent.

SCHROEDER and OWSLEY, JJ., join in the foregoing dissent.