(217 P.3d 56)
No. 100,255

STATE OF KANSAS, *Appellee*, v. KIM L. KELLEY, *Appellant*.

Opinion filed October 9, 2009.

*Carl Folsom, III*, of Kansas Appellate Defender Office, for appellant.

*Boyd K. Isherwood*, assistant district attorney, *Nola Tedesco Foulston*, district attorney, and *Steve Six*, attorney general, for appellee.

Before MALONE, P.J., PIERRON and LEBEN, JJ.

MALONE, J.: Kim L. Kelley appeals his convictions and sentences for two counts of rape, one count of attempted rape, and one count of aggravated incest. Kelley raises the following issues on appeal: (1) The district court erred by denying Kelley's motion for new trial alleging ineffective assistance of trial counsel; (2) the district court erred by admitting hearsay statements into evidence; (3) Kelley was denied a fair trial based on prosecutorial misconduct; (4) the district court committed reversible error when it gave an *Allen*-type instruction to jurors before deliberations began; (5) Kelley was denied a fair trial based on cumulative error; and (6) the district court violated Kelley's constitutional rights by imposing a sentence based on his criminal history which was not proven to a jury beyond a reasonable doubt and by imposing the aggravated term in the grid box under the sentencing guidelines.

During the spring of 2006, 16-year-old K.C.R. was living with her biological father, Kelley, and her stepmother, Naomi Kelley, at their residence in Wichita, Kansas. On June 7, 2006, K.C.R. told Naomi that Kelley had been coming into her room and touching her. K.C.R. asked Naomi not to tell anyone because she did not

want her father to get into trouble. Naomi immediately confronted Kelley about the accusation.

Later that night Kelley went to the police station and informed the officers he needed to report an incident involving his daughter. At Kelley's request, Officers Bradley Harris and Eric Matthews led Kelley to a private interview room. Kelley provided the officers with his name and address and stated he was there to report that he had made sexual advances to his daughter sometime during the month of May or June. Kelley stated he had touched his daughter on her vagina while he was masturbating. When the officers realized Kelley was confessing to a felony offense, they asked the name of his daughter and then terminated the interview. Harris took a picture of Kelley to document a small scratch on the left side of his face and a bite mark on his chest. Kelley's statement to the police officers was neither recorded nor reduced to writing.

Soon thereafter Detective Kelly Mar of the Exploited Missing Children's Unit (EMCU) interviewed K.C.R. During the interview, K.C.R. told Mar that her father had sexually assaulted her three times and had attempted to assault her a fourth time. K.C.R. told Mar her father had sex with her in her bedroom early in the morning on the day of her high school Spanish final, May 24 or 25, 2006. K.C.R. stated that she resisted Kelley, but he was able to put his penis inside her vagina. K.C.R. told Mar that a couple of days later Kelley entered her room a second time early in the morning and had sex with her again. K.C.R. stated that the third incident of sexual intercourse occurred in the guest room one evening a day or so after the second incident while K.C.R. was watching her infant niece. K.C.R. told Mar that on June 5 or 6, Kelley came to her room a fourth time and got on top of her. K.C.R. stated that Kelley attempted to sexually penetrate her with his penis and her pajama bottoms were torn. K.C.R. told Mar that Kelley left the room after she scratched his face and bit him.

Mar also interviewed Naomi. Naomi told Mar that she had noticed K.C.R.'s door was locked on the morning of June 7, which was unusual. Naomi asked K.C.R. what was going on, and K.C.R. told her that Kelley had been touching her. Naomi confronted Kelley about the accusation. According to Mar, Naomi said that

Kelley admitted that he touched K.C.R. but he did not provide any details. Also, according to Mar, Naomi told Kelley that he needed to turn himself into the police. Naomi also told Mar that she was aware of a prior false sexual allegation by K.C.R. against Kelley and that K.C.R. had a general reputation for lying.

On June 8, 2006, K.C.R. went to Via Christi Hospital, St. Joseph Campus, to see Diana Schunn, a sexual assault nurse examiner. K.C.R. told Schunn that on May 25 or 26 she had a discussion with Kelley in her room about dating. Kelley left K.C.R.'s room, but he came back at 4 a.m. the next morning. K.C.R. told Schunn that Kelley got on the bed, pulled her shorts down, and put his penis in her vagina. K.C.R. said it hurt, and she hit Kelley to make him stop. K.C.R. reported that the second incident occurred the same way. She was asleep when Kelley came to her room. He put his penis in her vagina and again K.C.R. hit Kelley. The third incident happened on a Wednesday when K.C.R. was watching her niece. Kelley came into the room, pushed K.C.R.'s skirt up, and put his penis in her vagina. The fourth incident occurred on June 6, 2006, when Kelley came to her room early in the morning and got on top of her. K.C.R. stated that she bit Kelley on his abdomen and scratched his shoulder. K.C.R. told Schunn that Kelley bit her right shoulder before he left the room. Schunn found a bite mark on K.C.R.'s right shoulder, but no signs of genital trauma.

On June 9, 2006, the State charged Kelley with three counts of rape and one count of attempted rape. The State later amended the first count to aggravated incest. At the preliminary hearing on July 11, 2006, K.C.R. testified about the four incidents of sexual assault. Her testimony was consistent with what she told Mar and Schunn. Sometime after the preliminary hearing, K.C.R. wrote a letter to her father as part of her therapy with her counselor, Janet Roberts. In the letter, K.C.R. wrote that she was sorry she had lied about her allegations against Kelley. Roberts told K.C.R. she needed to tell the police that she had lied.

After Naomi learned that K.C.R. had recanted her allegations, she took K.C.R. to see Kelley's defense attorney. K.C.R. initially told Kelley's attorney that all of the incidents with her father were consensual and that the injury on her shoulder was from when she

fell by a trash can. K.C.R. returned to the defense attorney's office for a later visit and completely recanted her allegations against Kelley, stating that nothing ever happened.

The case proceeded to a jury trial on January 23, 2007. At trial, K.C.R. testified that the whole story about the sexual assaults was a lie and that the first three incidents of sexual intercourse never happened. Regarding the fourth incident on June 6, 2006, K.C.R. testified that Kelley came to her room to wake her up in the morning but she would not get out of bed. K.C.R. testified that they struggled and she scratched him and bit him on the abdomen and he bit her on the shoulder. K.C.R. testified that she had been angry at Kelley for not allowing her to date until she turned 17 and for taking away her cell phone when she made the false allegations against him to Naomi.

The State also called Harris and Matthews, who testified about Kelley's statement at the police station. Next, the State called Mar, who testified about his interview with K.C.R. Over defense counsel's objection, Mar also testified about his interview with Naomi. Schunn testified for the State about the sexual assault exam and the statements K.C.R. made to her during the exam. The State introduced into evidence K.C.R.'s torn pajama bottoms. The State also called a DNA analyst who testified there was no seminal material on either the pajama bottoms or the drawstring. However, the analyst was able to discover chromosomes in the sample from K.C.R.'s shoulder, indicating male saliva. After the State rested its case, Kelley moved for a judgment of acquittal, which was denied. Kelley did not call any witnesses. The district court submitted the case to the jury, and the jury found Kelley guilty on all four counts.

On February 5, 2007, Kelley's defense counsel filed a motion for new trial which was later denied. On April 6, 2007, more than 10 days after the verdict, Kelley filed a pro se motion for new trial. In the pro se motion for a new trial, Kelley asserted for the first time that he had received ineffective assistance of trial counsel. The district court appointed another attorney to represent Kelley on his motion for a new trial. The court-appointed attorney filed a supplemental motion for a new trial raising numerous specific claims of ineffective assistance of trial counsel. Following a 2-day

hearing in which evidence was presented on Kelley's claims of ineffective assistance of counsel, the district court denied Kelley's motions for new trial. On November 15, 2007, the district court imposed an aggravated presumptive controlling sentence of 267 months' imprisonment. Kelley filed a timely notice of appeal.

Kelley raises several issues on appeal, and both parties focus their briefs on whether the district court erred in denying Kelley's motion for a new trial alleging ineffective assistance of trial counsel. However, we will begin by addressing Kelley's second claim that the district court erred by admitting Naomi's hearsay statements into evidence. At trial, the district court allowed the State to present hearsay statements made by Naomi to Mar. Mar testified that she interviewed Naomi regarding K.C.R.'s allegations. According to Mar, Naomi said that Kelley admitted that he touched K.C.R. but he did not provide any details. Also, according to Mar, Naomi told Kelley that he needed to turn himself into the police. When defense counsel objected to Mar's testimony about Naomi's statements as hearsay, the district court determined that Naomi was present in the courtroom and available for cross-examination and overruled the objection. However, the State never called Naomi to testify as a witness.

The rules regarding the admission or exclusion of evidence at trial may be applied as either a matter of law or discretion "depending on the contours of the rule in question." *State v. Carter*, 278 Kan. 74, 77, 91 P.3d 1162 (2004). An appellate court reviews the district court's determination that hearsay is admissible under a statutory exception under an abuse of discretion standard. This standard includes review to determine that the district court's decision was not guided by erroneous legal conclusions. *State v. Miller*, 284 Kan. 682, 708, 163 P.3d 267 (2007). Furthermore, review of the admission or exclusion of evidence is governed by the harmless error rule. *State v. Williams*, 263 Kan. 134, Syl. ¶ 3, 947 P.2d 25 (1997).

The Sixth Amendment to the United States Constitution provides that in all criminal prosecutions, the accused shall enjoy the right "to be confronted with the witnesses against him." The Sixth Amendment guarantee of the right to confrontation is applicable

to the states through the Fourteenth Amendment. *Pointer v. Texas*, 380 U.S. 400, 406, 13 L. Ed. 2d 923, 85 S. Ct. 1065 (1965). Section 10 of the Kansas Constitution Bill of Rights states the accused shall have the right "to meet the witness face to face." The Kansas Supreme Court has stated the protections given under both Constitutions with regard to confronting witnesses are the same. *State v. Busse*, 231 Kan. 108, 110, 642 P.2d 972 (1982).

When a witness testifies at a hearing to a statement made by someone else, offered to prove the truth of the matter stated, such testimony is hearsay evidence and is generally inadmissible. K.S.A. 2008 Supp. 60-460. One of the most fundamental exceptions to the hearsay rule is that a witness may testify at a hearing to a statement made by someone else if the declarant is present at the hearing and available for cross-examination with respect to the statement and its subject matter, provided the statement is otherwise admissible. Specifically, K.S.A. 2008 Supp. 60-460(a) provides the following exception to the inadmissibility of hearsay evidence:

"A statement previously made by a person who is present at the hearing and available for cross-examination with respect to the statement and its subject matter, provided the statement would be admissible if made by declarant while testifying as a witness."

For hearsay testimony to be admissible under K.S.A. 2008 Supp. 60-460(a), the statute only requires the declarant to be present at the hearing and *available* for cross-examination. However, the Kansas Supreme Court has determined that in a criminal proceeding, the Confrontation Clause requires the declarant to actually testify at the hearing in order for a statement to be admissible under K.S.A. 2008 Supp. 60-460(a). In *State v. Fisher*, 222 Kan. 76, 563 P.2d 1012 (1977), the defendant was charged with indecent liberties with a child and aggravated sodomy based on reports by the defendant's 11-year-old stepdaughter. At trial, however, the stepdaughter recanted her allegations and told the jury she had lied about the defendant. The State then offered into evidence hearsay statements the stepdaughter and her mother had made to a deputy police officer about the initial allegations of sexual abuse against the defendant. Although the mother was present in the

courtroom during the trial, she did not testify. The defendant was convicted as charged.

On appeal, the defendant argued the district court erred by allowing the hearsay statements of the stepdaughter and her mother. The court determined that the district court did not err by admitting the hearsay statements of the stepdaughter under 60-460(a) because the stepdaughter had testified before the hearsay statements were admitted into evidence. However, the court determined that the district court committed reversible error by admitting the hearsay statements of the mother under 60-460(a). The court noted that the mother was present in the courtroom during the trial and she could have been called as a witness by the defendant. However, the court stated, "[I]n our view, calling a declarant as a defense witness is no substitute for cross-examining that declarant as a state's witness." 222 Kan. at 81. The court explained that "for the declarant to be subject to full and effective cross-examination by the defendant, [the declarant] must be called to testify by the state." 222 Kan. at 82. The court concluded, "For reasons of policy and fairness, and to ensure the right of confrontation is not abridged, we hold that in a criminal proceeding the declarant must testify at trial *before* hearsay evidence may be admitted under K.S.A. 60-460(a)." (Emphasis added.) 222 Kan. at 82.

The Kansas Supreme Court later modified *Fisher* in *State v. Davis*, 236 Kan. 538, 541, 694 P.2d 418 (1985). In *Davis*, the defendant was charged with rape, aggravated sodomy, aggravated battery, and aggravated robbery. The district court permitted police officers to testify about the victims' out-of-court statements before the victims themselves took the stand. However, the State later called the victims as witnesses at the trial. The defendant was convicted of all the charges except aggravated robbery.

On appeal, the defendant claimed the district court erred by permitting the police officers to testify about the victims' statements to the police before the victims themselves testified. The Supreme Court discussed its earlier ruling in *Fisher* that in a criminal proceeding, the declarant must testify at trial *before* hearsay evidence may be admitted under 60-460(a). However, the court

determined that the ruling in *Fisher* must be considered and applied in the light of the specific facts of that case. The court stated, "While it may be better practice . . . to call the declarants prior to the admission of their out-of-court statements by other witnesses, the failure to do so when the declarants are available *and actually testify* does not violate the confrontation clause of the Sixth Amendment." (Emphasis added.) 236 Kan. at 541.

In *Miller*, our Supreme Court again addressed *Fisher* in light of the revised confrontation analysis of recent United States Supreme Court decisions emphasizing the distinction between testimonial and nontestimonial statements. Observing that our Supreme Court based its decision in *Fisher* on the Confrontation Clause, and not simply on a statutory analysis of 60-460(a), the court held that the *Fisher* rule does not apply to nontestimonial statements because nontestimonial statements do not implicate the Confrontation Clause. Thus, in a criminal proceeding, the first step in determining whether a statement is admissible hearsay is to determine whether the statement was testimonial. As discussed in *Miller*, testimonial statements include statements made under circumstances which would lead an objective witness to reasonably believe that the statement would be available for use at a later trial. Statements made to police officers in the course of interrogation are generally testimonial. 284 Kan. at 712-13. The Kansas Supreme Court refined its test to determine whether a statement is testimonial in *State v. Brown*, 285 Kan. 261, Syl. ¶ 15, 173 P.3d 612 (2007), but the first factor to consider is whether an objective witness would reasonably believe a statement would later be available for use to prosecute a crime.

To summarize, in a criminal proceeding, the first step in analyzing whether a statement is admissible hearsay is to determine whether the statement was testimonial. Assuming the statement was testimonial, the declarant must actually testify at the hearing in order for a hearsay statement to be admissible under K.S.A. 2008 Supp. 60-460(a). The declarant's mere presence at the hearing is insufficient for the hearsay statement to be admissible in a criminal proceeding. While it is the better practice to call the declarant as a witness before the hearsay statement is offered into evidence,

the failure to do so does not violate the Confrontation Clause as long as the declarant actually testifies at the hearing.

Here, Naomi's statements were made to a Wichita EMCU detective conducting an investigation of the rape allegations K.C.R. had made against Kelley. Therefore, Naomi's statements were made during the course of a police interrogation and an objective witness would reasonably believe that her statements would be available for use at a later trial, making her statements testimonial. Because the statements were testimonial, Kelley's rights under the Confrontation Clause are implicated and the *Fisher/Davis* rule applies. Under the *Fisher/Davis* rule, Naomi needed to testify as a witness, either before or after Mar testified, in order to render her statements to Mar admissible under K.S.A. 2008 Supp. 60-460(a). Because Naomi did not actually testify as a witness at trial, her hearsay statements should not have been admitted into evidence.

The State makes no argument that Naomi's hearsay statements to Mar were admissible under K.S.A. 2008 Supp. 60-460(a). Furthermore, the State does not claim that the testimony was admissible under any other exception to the hearsay rule. However, the State argues that Kelley's convictions should not be set aside based on the inadmissible hearsay testimony for two reasons: (1) Kelley did not preserve the issue for appeal because he failed to make a contemporaneous objection to the evidence and because he acquiesced in the district court's ruling, and (2) the admission of the hearsay testimony was harmless error. We will examine each argument in turn.

Generally, a party must make a timely and specific objection to the admission of evidence at the trial to preserve the issue for appeal. K.S.A. 60-404. In *State v. King*, 288 Kan. 333, 349, 204 P.3d 585 (2009), the Kansas Supreme Court emphasized "the importance of this legislative mandate" contained in K.S.A. 60-404 which "dictates that evidentiary errors shall not be reviewed on appeal unless a party has lodged a timely and specific objection to the alleged error at trial."

Here, Kelley objected to the statements at issue during the State's examination of Mar. The trial transcript reflects the following:

"Q. [Prosecutor] Talking to Naomi, does she explain to you how Mr. Kelley came to turn himself in?

"A. [Mar] Yes, she does. We talk about how does she find out about it. And she said that

"[Defense counsel]: Your Honor, I will object to hearsay and object based on that first.

"THE COURT: Miss Kelley is present, isn't she?

"[Prosecutor]: Front row of the gallery, Your Honor.

"THE COURT: I will deem her available for cross-examination. I will overrule the objection on that basis. You may inquire. You may answer."

The State acknowledges that Kelley objected to Naomi's hearsay statements during the State's examination of Mar. Nevertheless, the State argues that Kelley failed to preserve the hearsay issue for appeal because Kelley did not renew his objection when the State rested its case and it became apparent that the State was not going to call Naomi as a witness. The State argues that under the *Fisher/Davis* analysis, Kelley's confrontation rights were not violated and no error was committed until the State rested its case without calling Naomi as a witness. According to the State, Kelley needed to renew his hearsay objection when the State rested its case without calling Naomi as a witness in order to give the district court the opportunity to correct any alleged trial error. Stated in another way, the State argues that Kelley needed to object twice at trial to the inadmissible hearsay testimony, and Kelley's single objection at the time the hearsay testimony was offered into evidence was insufficient to preserve the issue for appeal.

We are unpersuaded by the State's argument. When defense counsel objected to the hearsay testimony during the State's examination of Mar, the district court overruled the objection and deemed Naomi's presence in the courtroom as sufficient for the hearsay testimony to be admissible. This ruling was contrary to the Kansas Supreme Court's interpretation of 60-460(a) as set forth in *Fisher/Davis*. When defense counsel objected to Naomi's hearsay statements, the district court should have inquired from the State whether Naomi was present at the hearing *and whether she would be called as a witness by the State*. The State's assertion that no error was committed until the State rested its case without calling Naomi as a witness is incorrect. The district court erred at the

moment it overruled the hearsay objection without receiving an assurance from the State that Naomi would be called as a witness during the trial. Kelley raised a timely and specific objection to Naomi's hearsay statements when the testimony was offered by the State. While Kelley certainly *could have* renewed his objection to the hearsay testimony when the State rested its case, we conclude that Kelley was not required to do so in order to preserve this issue for appeal.

The State also argues that this court should not address this issue because Kelley "acquiesced" in the district court's ruling when he cross-examined Mar and introduced additional favorable out-of-court statements Naomi made to Mar, including that Naomi was aware of a prior false sexual allegation by K.C.R. against Kelley and that K.C.R. had a general reputation for lying. Essentially, the State is arguing that Kelley was required to waive cross-examination of Mar as to Naomi's statements in order to preserve the hearsay issue for appeal. Whether a party acquiesced to a judgment is a question of law subject to unlimited review. *Alliance Mortgage Co. v. Pastine*, 281 Kan. 1266, 1271, 136 P.3d 457 (2006).

The State's argument is misplaced. The State relies on two civil cases providing that when a party acquiesces in the judgment of the district court the party is barred from appealing the judgment. The district court's ruling on an evidentiary issue at a criminal trial is not a judgment to which the doctrine of acquiescence applies. The State does not provide any cases wherein Kansas appellate courts have employed the doctrine of acquiescence to bar a criminal defendant from challenging a district court's decision regarding the admission of evidence. The doctrine of acquiescence has limited application in criminal cases. *State v. Hills*, 264 Kan. 437, 440, 957 P.2d 496 (1998).

This brings us to the State's argument that the admission of the hearsay testimony was harmless error. When a criminal defendant's confrontation rights have been violated by the admission of hearsay evidence, the constitutional harmless error test applies. Under the federal constitutional harmless error test, an error may not be held to be harmless unless the appellate court is willing to declare a belief that it was harmless beyond a reasonable doubt. In other

words, the court must be able to declare beyond a reasonable doubt that the error had little, if any, likelihood of having changed the result of the trial. *State v. Cosby*, 285 Kan. 230, Syl. ¶ 10, 169 P.3d 1128 (2007).

Here, the State argues there was sufficient evidence to convict Kelley of the charges even without considering the inadmissible hearsay testimony. The State notes that K.C.R. initially gave consistent statements regarding the four incidents of sexual assault in her statements to Mar and Schunn, and at the preliminary hearing. The State also notes that Kelley admitted to Harris and Matthews that he had touched his daughter on her vagina while he was masturbating. There was also physical evidence to corroborate the charges, including K.C.R.'s torn pajama bottoms, the scratch on the left side of Kelley's face, the bite mark on his chest, and the bite mark on K.C.R.'s shoulder indicating male saliva.

On the other hand, the evidence against Kelley was far from overwhelming. At trial, K.C.R. recanted her allegations and testified that the whole story about the sexual assaults was a lie. K.C.R. testified she initially made up the allegations because she had been angry at Kelley for not allowing her to date until she turned 17 and for taking away her cell phone. The physical evidence against Kelley was limited. Schunn found no signs of genital trauma in K.C.R.'s sexual assault examination. The State's DNA analyst found no seminal material on K.C.R.'s pajama bottoms or the drawstring. Although the police officers testified that Kelley admitted to touching his daughter on her vagina, this falls far short of receiving a full confession from Kelley to all the charges.

At trial, the State asked the jury to believe K.C.R.'s initial reports to Mar and Schunn, rather than believing K.C.R.'s testimony at trial. In such an instance, corroboration of K.C.R.'s initial allegations was crucial in order for the State to prove the charges against Kelley beyond a reasonable doubt. Naomi's hearsay testimony was important corroborating evidence of K.C.R.'s initial allegations. By admitting into evidence Naomi's hearsay statements to Mar, the jury was left with the understanding that Kelley had admitted to Naomi that he touched K.C.R. The jury was also left with the understanding that Naomi told Kelley that he needed to turn him-

self into the police. During closing argument, the prosecutor argued that Naomi had insisted that Kelley "confess" to the police.

Naomi testified at the motion for new trial. Contrary to Mar's trial testimony, Naomi testified that Kelley never admitted to her that he touched K.C.R. inappropriately. She testified that because Kelley worked for the school district, he had a mandatory reporting requirement for any allegations of abuse by children. Naomi testified that when K.C.R. made the allegations against Kelley, she told Kelley that he needed to go to the police station to *report* K.C.R.'s allegations, but she did not expect him to *confess* to any of the allegations.

Considering K.C.R.'s recantation of her allegations against Kelley, the lack of substantial physical evidence supporting the allegations, and the significance of Naomi's hearsay statements to Mar, we are unable to conclude beyond a reasonable doubt that the inadmissible hearsay testimony had little, if any, likelihood of having changed the result of the trial. We recognize that Kelley has raised other significant issues on appeal, including his claim of ineffective assistance of trial counsel. Because we conclude that Kelley is entitled to a new trial based on the error in admitting the hearsay statements into evidence, we will not address the other issues Kelley has raised on appeal.

Reversed and remanded for new trial.