NOT DESIGNATED FOR PUBLICATION

No. 125,537

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

RICHARD MORRIS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; THOMAS KELLY RYAN, judge. Submitted without oral argument. Opinion filed June 28, 2024. Affirmed.

*Kai Tate Mann*, of Kansas Appellate Defender Office, for appellant.

*Shawn E. Minihan*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before BRUNS, P.J., HILL, J., and MARY E. CHRISTOPHER, S.J.

PER CURIAM: The State charged Richard Morris with aggravated indecent liberties with a child. H.R. told her mother that Morris offered her candy in exchange for touching his toy. At trial, after finding H.R. was an unavailable witness, the district court admitted H.R.'s statement through her mother's testimony. The jury ultimately convicted Morris as charged. On appeal, Morris argues the district court erred in admitting Mother's hearsay testimony and complains the prosecutor erred when it made argument on the admissibility issue. These arguments are not persuasive. Morris also makes two constitutional challenges to the Kansas Offender Registration Act (KORA) for the first

1

time on appeal. For reasons stated in this opinion, we affirm Morris' conviction and sentence.

FACTUAL AND PROCEDURAL HISTORY

Mother moved to a new home with her three children in December 2017. After Mother obtained employment and was unable to find childcare, a family member recommended Morris watch the children when needed. Mother and the family member had known Morris for a long time, and Mother believed she could trust him to watch her children. Morris agreed and watched the children for no compensation while Mother worked for about seven months, from January of 2018 to August 17, 2018. Morris primarily watched H.R., who was three years old at the time.

On August 17, 2018, Morris watched H.R. while Mother was at work. Only Morris and H.R. were home during the day. After Morris left, Mother and H.R. went to the grocery store and Mother bought H.R. some candy. When they settled back in the car, H.R. said that Morris "told her that he would give her candy if she touched his toy." Mother asked H.R. what Morris' toy was, and H.R. told her "'his toy'" was "long and round." Mother asked H.R. about it again when they got home, and H.R. repeated her comment.

H.R.'s statement concerned Mother, so she called H.R.'s dad and he suggested Mother call the police. Police Officer Kevin Curry responded to Mother's call, and he interviewed Mother in the parking lot of her apartment building. H.R. was out of earshot when Mother spoke with law enforcement. Officer Curry suggested Mother schedule a child interview at the Sunflower House, which provides forensic interview services specifically designed for children. He also directed Mother not to speak with H.R. about the events again.

Upon reviewing Mother's sexual abuse report a few days later, Detective Brett Hays contacted Mother and interviewed her about the events. Based on Mother's consistent story, Detective Hays grew concerned and scheduled an interview at the Sunflower House.

A social worker at the Sunflower House conducted a forensic interview with H.R. nearly two weeks after the initial report, on August 29, 2018. H.R. did not make any disclosures or repeat any allegations related to Morris during the interview. And according to Mother's testimony at trial, H.R. did not say anything about it after.

The same day, Detective Hays called Morris and scheduled an interview. Detective Hays drove to Morris' residence about 20 minutes later, and Morris met him outside. Detective Hays made an audio recording of his interview with Morris, but he explained at trial he did not get video footage due to his body camera malfunctioning. The redacted interview was later published to the jury and admitted to the record at trial.

Upon making contact with Morris at his home, Detective Hays requested Morris "have a seat" in his vehicle and introduced himself to Morris. Detective Hays proceeded to inform Morris that he was not under arrest, he was not being detained, he did not have to speak with Detective Hays, and he could exit the vehicle at any time. Detective Hays asked Morris if he understood, and Morris responded, "Yes." Detective Hays then questioned whether Morris was comfortable speaking with him in the car, and Morris assured him it was fine.

After making small talk, Detective Hays informed Morris that he wanted to speak with him because "on August 17th . . . [H.R.] went to the grocery store with her mom . . . and made the comment that . . . Rick asked her to touch his toy in exchange for some candy." Detective Hays asked Morris, "Do you know anything about that?" Morris admitted to giving H.R. candy but denied knowing anything about the allegation.

3

Detective Hays told Morris that H.R. described the toy as "long and round." Detective Hays then asked Morris if there was a chance H.R. saw Morris use the restroom. Morris said H.R. barged into the bathroom once, but he did not think she saw his penis because he turned away. He denied showing H.R. his penis and denied ever speaking with her about it.

Detective Hays then asked Morris if "there is any way that she could have just accidentally touched your penis?" Then he questioned whether Morris asked H.R. to touch his penis by suggesting H.R. may have been curious. Detective Hays implied that Morris' behavior was indicating that something was "really bothering" him. Morris then told Detective Hays that H.R. once touched his penis while sitting on his lap. Morris explained that he tried to change the subject after it happened because it made him feel uncomfortable and nervous.

Detective Hays proceeded to inform Morris that he would not get arrested that day, regardless of what Morris told him. Detective Hays told Morris that he did not believe Morris was a bad guy, but suggested Morris be honest about the moment when H.R. saw his bare penis.

Morris explained that H.R. "asked what it was and I told her it was my toy." He added, "I tried to, you know, get out of it . . . change the subject and stuff like that." Morris told Detective Hays that H.R. then asked if she could touch his penis while she was sitting on his lap, and he tried to change the subject again.

A little bit later, Morris told Detective Hays that he opened his pants and H.R. saw his bare penis while she was sitting on his lap. H.R. then touched it "for not even a second" and "that was it." Morris denied offering H.R. candy in exchange for touching his penis.

4

Morris told Detective Hays that the event was not planned. And he agreed with Detective Hays' implication that he lost his judgment when H.R. touched his penis because he became aroused. Morris denied taking H.R.'s hand to help her touch his penis. He again claimed it was "just a touch," "for a short time," and "probably a minute, if a minute." Morris told Detective Hays that H.R. did not stroke his penis, and he did not give her any instruction or direction. He stated: "She just touched it and I'll admit it felt good, but that . . . that's it."

Morris stopped the touching because he "felt guilty about it." And he denied offering H.R. candy in exchange for her silence about touching his penis, although he admitting to bribing her with candy in exchange for being silent about joining him outside while he smoked cigarettes.

Morris also told Detective Hays that H.R. only touched his penis that day and added that it happened "no more than three times" that day. Morris explained that he showed her his penis one time, she touched his penis through his shorts one time, and she felt his bare penis one time.

About one week after Detective Hays' interview, the State charged Morris with one count of aggravated indecent liberties with a child, in violation of K.S.A. 21-5506(b)(3). A two-day jury trial was held on February 10 and 11, 2020.

At trial, the State presented the testimony of four witnesses and introduced the police interviews with Mother and Morris as evidence. Detective Hays testified as the State's first witness. He provided details into his investigation, which included his observation of the Sunflower House interview and his conversation with Morris.

The State called H.R., five years old at the time of trial, as its second witness. H.R. testified to her name, her age, and her favorite color. And she identified the names of her

friends and daycare teachers. Through a series of questions posed by the prosecutor, H.R. demonstrated she could tell the difference between a truth and a lie. But H.R. testified that she did not recognize anyone in the courtroom and did not remember somebody named Rick when questioned by the State. Morris' counsel declined to cross-examine H.R., and the State proceeded to call Mother to the stand.

Mother testified she had three children, including H.R. She explained when H.R. was three years old, Mother had Morris watch H.R. because Mother did not have childcare arranged yet. Mother explained she had known Morris a long time because he was the ex-husband of a family member.

Before Mother continued with her testimony the prosecutor asked for a break, and the jury was excused while the parties took up a matter outside the hearing of the jury. The State requested Mother be permitted to testify to H.R.'s allegation under a hearsay exception. The State moved the court to determine H.R.'s statement was admissible hearsay based on her unavailability as a witness and the reliability of her statement under K.S.A. 60-460(dd) (permitting hearsay statements in criminal proceedings when a child is alleged to be a victim of the crime and the child is unavailable as a witness). Morris' defense counsel objected to any admission of hearsay.

While the jury remained out of the courtroom, the State questioned Mother about H.R.'s statements to Mother. Mother testified H.R. never made comments of a sexual nature prior to their conversation in the car, and she had never previously described a penis as a toy. Mother testified it was the candy, and not herself, that prompted H.R. to make the statement about Morris. And Mother believed H.R. knew the difference between right and wrong when the events occurred.

The State argued the fact it had tried to elicit an identification of the defendant from H.R., which she was unable to do, indicating that she was unavailable for testimony

6

regarding this incident. Therefore, any statement that H.R. made out of court to Mother would be completely covered by the statutory exception to the hearsay rule. The State also argued the statement was coming in through the testimony that was heard during Detective Hays' interview of Morris and through his own statements, so the door had already been opened to it.

After hearing arguments from the parties, the district court took a recess and made its ruling. It determined H.R.'s statement was admissible hearsay under K.S.A. 60-460(dd). The court specifically found under K.S.A. 60-460(dd)(1) the statement made by H.R. was as the alleged victim of the crime. Under K.S.A. 60-460(dd)(2), the court found for purposes of asking H.R. to recall the same information she disclosed when she was three years old, H.R. was unavailable to testify as a witness. As to the other two prongs of the three-prong test under K.S.A. 60-460(dd)(2), the apparent reliability of the statement, the court noted the child was not induced to make the statement falsely with either threats or promises. The court observed that the child was not at the time familiar with body parts, Mother never had any indication that H.R. knew anything in particular about a penis or any type of sexual statements, and H.R.'s statements were literally out of the blue. There was no indication of or any reason why the child would make this story up. The court concluded that K.S.A. 60-460(dd) provided a mechanism to allow for the out-of-court statements by H.R. to her mother to be presented to the jury. The court also ruled PIK Crim. 4th 51.120, "Hearsay Evidence of Child Victim Who is Unavailable or Disqualified," would be used in the course of instructions to the jury and counsel would be able to argue those facts in their case.

Mother testified to H.R.'s statements to her when direct examination resumed. Officer Curry then testified as the State's final witness. He testified to his conversation with Mother and his request to separate H.R. from Mother during the interview. Officer Curry's body camera footage from his interview with Mother was then published for the jury.

7

After the State rested and Morris' motion for acquittal was denied, Morris testified in his own defense on the second day of trial. Morris denied ever intentionally showing H.R. his penis, but he testified to H.R. barging into the bathroom while he was urinating. Morris then described an incident where H.R. jumped into his lap and felt his penis through his shorts. He explained, "When she got on my lap, she felt something, and I tried to, you know, blow it off, and I think I may have used toy, but that was . . . ." Counsel interrupted and questioned, "So did you ever refer to your penis as a toy?" And Morris responded, "Possibly without thinking."

Morris denied pulling his pants down or asking H.R. to touch his penis. Morris also denied asking her to touch his penis and testified he never offered her candy for her silence. Morris admitted to giving H.R. M&M's as a bribe for not telling Mother about going outside to smoke cigarettes.

Morris addressed his interview with Detective Hays and testified he felt Detective Hays was leading him or "putting words in my mouth." Morris testified that when he gets nervous he babbles, and he did not know what to say when he was being interviewed by Detective Hays. For example, Morris conceded his statements to Detective Hays regarding how long the touching lasted were contradictory—at first he said just a moment, but later it appeared he was agreeing it lasted longer. But Morris testified he only said it was longer because Detective Hays "kept changing it on me." And he denied H.R. touched his penis for an extended length of time.

The jury convicted Morris of aggravated indecent liberties with a child in violation of K.S.A. 21-5506(b)(3), an off-grid person felony. The district court sentenced Morris to a hard 25 sentence pursuant to K.S.A. 21-6627, with lifetime postrelease supervision and an order to register as an offender.

Morris appeals.

ANALYSIS

I. *Admission of evidence of H.R.'s out-of-court statement*

In his first issue on appeal, Morris argues the district court erred when it applied K.S.A. 60-460(dd), finding Mother's testimony as to H.R.'s out-of-court statement was admissible hearsay. But resolution of Morris' larger issue requires us to address multiple questions of law.

*Preservation*

First, Morris addresses the preservation of this claim, contending we can consider his arguments because he objected below, or alternatively, his arguments meet an exception to the general rule against raising new claims on appeal. Second, he argues the district court made a mistake of fact and law in applying K.S.A. 60-460(dd), finding H.R. was a disqualified or unavailable witness who provided a reliable statement. Finally, Morris argues the corpus delicti rule requires us to reverse his convictions with prejudice because absent Mother's hearsay testimony, his extrajudicial confession alone is not sufficient to sustain a conviction.

In response, the State does not appear to contest Morris' preservation of this issue. But in addressing the merits of Morris' claims, the State argues Morris' claims are contrary to the record and are unsupported by Kansas precedent.

This court is typically precluded from reviewing an evidentiary challenge absent a timely and specific objection made on the record. See K.S.A. 60-404; *State v. Dupree*, 304 Kan. 43, 62, 371 P.3d 862, *cert. denied* 580 U.S. 924 (2016). Generally, any pretrial objection to the admission or exclusion of evidence must be preserved by contemporaneously objecting at trial, which can be accomplished through a standing

objection. See *State v. Richard*, 300 Kan. 715, 721, 333 P.3d 179 (2014). But see *State v. Gaona*, 293 Kan. 930, 956, 270 P.3d 1165 (2012) (characterizing contemporaneous objection rule as a "prudential rather than jurisdictional obstacle to appellate review"). Kansas appellate courts have, on occasion, refused to strictly apply the contemporaneous objection rule in some contexts upon finding the underlying purpose for the rule has been satisfied. See *State v. Hart*, 297 Kan. 494, 510-11, 301 P.3d 1279 (2013); *State v. Spagnola*, 295 Kan. 1098, 1103, 289 P.3d 68 (2012); *State v. Breedlove*, 295 Kan. 481, 490-91, 286 P.3d 1123 (2012).

The State filed a pretrial motion to determine the admissibility of H.R.'s out-of-court statement to Mother under K.S.A. 60-460(dd). As the State mentions in its brief on appeal, the motion is file stamped for the second day of trial. But during the trial, the district court addressed the motion and noted it had been provided the week prior at a pretrial conference. The record does not include any written objection by Morris to the State's motion.

At trial, after the State called H.R. to the stand and she was unable to identify Morris or provide any disclosures, it sought to introduce H.R.'s out-of-court statement through Mother's testimony. When the State moved the court to rule H.R.'s out-of-court statement was admissible under K.S.A. 60-460(dd), defense counsel immediately objected, arguing, "[F]irst off, I would say I would object to any hearsay. I think that's what starts it all off. I think the statute does require a hearing to determine whether the child is disqualified or not." Based on that objection, the State argued the district court could sua sponte determine a child's availability after the child has taken the stand. The district court allowed the parties to proceed with questioning Mother about H.R.'s statement, which included cross-examination by defense counsel, before the parties made arguments on the issue out of the jury's presence. Morris' defense counsel argued that H.R.'s statement was not admissible hearsay because it was unreliable.

10

The district court ultimately concluded H.R.'s out-of-court statements to her Mother were admissible hearsay under K.S.A. 60-460(dd). The district court asked counsel if there was "anything else for the record with regard to these issues," and counsel for both parties responded in the negative. Defense counsel did not lodge a standing objection at any point after the district court ruled Mother could testify as to H.R.'s out-of-court statements. Notably, defense counsel did not lodge any objections to Mother's testimony generally when she provided it to the jury.

Morris argues he preserved his argument for appeal because his counsel "objected to any hearsay when the prosecution attempted to admit [H.R.]'s hearsay statement solely pursuant to K.S.A. 60-460(dd)." But as referenced above, Morris' objection was not specific or contemporaneous. Defense counsel simply objected "to any hearsay" before the hearing to determine whether H.R. was an unavailable witness. And defense counsel lodged no other objections to Mother's testimony or any other evidence.

Morris alternatively argues the district court's mid-trial hearing to determine the admissibility of this testimony served the purpose of the contemporaneous objection rule. In *State v. Randle*, 311 Kan. 468, 480, 462 P.3d 624 (2020), our Supreme Court found it could consider a defendant's challenge to the admissibility of evidence—despite defense counsel's vague grounds for objecting—because the "purposes of the contemporaneous objection rule under K.S.A. 60-404 were fulfilled." The *Randle* court reasoned that while defense counsel "misspoke as to the specific grounds on which he was objecting," the district court nevertheless "knew the issue associated with the video and had the opportunity to rule on it." 311 Kan. at 480; see also *State v. D.W.*, 318 Kan. 575, 578-79, 545 P.3d 26 (2024) (relying on *Randle* to find contemporaneous objection rule was satisfied because a motion to exclude evidence was pending, the State argued relevance at trial, and the district court ruled on relevance and undue prejudice).

11

In *Spagnola*, our Supreme Court similarly found it could consider an admissibility claim despite the defendant's lack of contemporaneous objection because the purpose of the rule was fulfilled. 295 Kan. at 1103. The *Spagnola* court relied on a much older case, *State v. Gordon*, 219 Kan. 643, 652, 549 P.2d 886 (1976), which reasoned:

> "Ordinarily, failure to make timely, specific objection to the admission of evidence will bar consideration of the admissibility question on appellate review. Here, the appellant's objection was not 'timely' in the strict sense, but there is no doubt the district court was apprised of the issue before it rendered its decision . . . . What transpired is consistent with the rationale underlying the contemporaneous objection rule—i.e.[,] objecting to admissibility and stating the grounds therefore permits the court to preclude improper evidence from affecting the decision. This was a trial by the court; no jurors had been swayed by the improper evidence. The court had not rendered its decision when the issue was raised, and we think under the circumstances of this case the spirit if not the letter of the contemporaneous objection rule was satisfied. [Citations omitted.]"

As in *Gordon*, there is no doubt that the district court was apprised of the issue of admissibility before it rendered its decision to permit Mother's testimony reflecting H.R.'s out-of-court statements. The State filed a pretrial motion to address this issue, and the State raised the issue and requested the jury leave before making the argument to the district court. And what transpired through the district court's sua sponte hearing was consistent with the purpose identified in *Gordon*—permitting the district court to preclude improper evidence from affecting the decision. 219 Kan. at 652. And like *Gordon*, the spirit of the contemporaneous objection law was satisfied when the district court held a hearing on the issue mid-trial and the parties were able to present arguments and cross-examine Mother before the district court rendered a decision on admissibility.

As a result, we will consider Morris' admissibility claim despite his lack of contemporaneous objection.

*The district court did not err in admitting H.R.'s out-of-court statements.*

Morris argues the district court erred in admitting H.R.'s out-of-court statements solely pursuant to K.S.A. 60-460(dd). Morris contends the court erroneously found H.R. met the requirement of "disqualified or unavailable as a witness" and erred in finding the statement was "apparently reliable." Thus, he claims the district court erred by allowing the State to introduce hearsay, which did not fit a hearsay exception.

The rules regarding the admission or exclusion of evidence at trial may be applied as either a matter of law or discretion "depending on the contours of the rule in question." *State v. Carter*, 278 Kan. 74, 77, 91 P.3d 1162 (2004). An appellate court considers a district court's determination that hearsay is admissible under a statutory exception using an abuse of discretion standard, also reviewing to determine that the court's decision was not guided by erroneous legal conclusions. *State v. Kelley*, 42 Kan. App. 2d 782, 787, 217 P.3d 56 (2009); see also *Randle*, 311 Kan. at 476. A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Levy*, 313 Kan. 232, 237, 485 P.3d 605 (2021). The erroneous admission or exclusion of evidence is subject to review for harmless error under K.S.A. 2023 Supp. 60-261.

Morris' brief hints at Mother's testimony as generally objectionable, but Morris does not actually identify specific out-of-court statements he claims were erroneously admitted into evidence. This lack of precision in other cases has led reviewing courts to find that "without more specific guidance on which portions of [the] testimony were allegedly hearsay, this court cannot even begin to engage in a proper analysis of whether the court improperly admitted hearsay evidence." *In re K.L.*, No. 124,873, 2022 WL 4391222, at *7 (Kan. App. 2022) (unpublished opinion); see also *State v. Robinson*, 293 Kan. 1002, 1027, 270 P.3d 1183 (2012) ("We will not speculate as to the statements [defendant] seeks to challenge.").

13

Within the record, however, the State's Motion to Determine Admissibility of Evidence identifies two out-of-court statements H.R. made to her mother. First, H.R. said that Morris said he would give her candy if she touched his toy. Second, when Mother asked H.R. what the toy looked like, H.R. said it was long and round.

We begin our analysis by considering whether the out-of-court statements made by H.R. constitute hearsay. As the late distinguished Professor James M. Concannon advised, "Don't think great thoughts! Read the rule!" Concannon, *Civil Code and Time Computation Changes Effective July 1*, 79 J.K.B.A. 20, 21 (June 2010). "Evidence of a statement which is made other than by a witness while testifying at the hearing, offered to prove the truth of the matter stated, is hearsay evidence." K.S.A. 60-460.

Hearsay evidence is inadmissible unless it fits within one or more of the statutory exceptions listed in K.S.A. 60-460. If the out-of-court statement is offered for some reason other than to prove the truth of the matter stated, it is not considered hearsay. The theory behind the rule is that when a statement is introduced as evidence for the truth of the matter asserted, the declarant's credibility is the basis for its reliability, and the declarant must be subject to cross-examination. *State v. Race*, 293 Kan. 69, 76, 259 P.3d 707 (2011). If an out-of-court statement is offered for some other reason, it is not hearsay. For instance, a statement offered to prove merely that the statement was made is not hearsay. *Randle*, 311 Kan. at 476.

When a witness testifies at a hearing to an out-of-court statement made by someone else, and the statement is not offered to prove the truth of the matter or is only offered to show the effect on the listener, it is not hearsay.

"If a statement is offered not to prove the truth of the matter asserted but to prove that the statement was made, it is not hearsay. *State v. Harris*, 259 Kan. 689, 698, 915 P.2d 758 (1996). 'If relevant, such a statement is admissible through the person who

14

heard it.' *Harris*, 259 [Kan.] at 698 (citing *State v. Getz,* 250 Kan. 560, Syl. ¶ 2, 830 P.2d 5 [1992]). We also have held that statements offered into evidence not to prove the truth of the matter asserted but 'to show their effect on the listener' do not constitute hearsay." *Race*, 293 Kan. at 76.

Here, Mother testified concerning H.R.'s two out-of-court statements, so these statements were made by someone other than the witness testifying at the hearing. H.R. did testify briefly at the hearing, but the district court determined she was unavailable. The issue is whether the statements were offered to prove the truth of the matter asserted. Because the child used the word "toy," the statement arguably does not prove the truth of the matter asserted, which was that Morris had committed aggravated indecent liberties. The statements could be offered independently to show why Mother called the police, however, which in turn led to the investigation and ultimately to Morris' confession.

*H.R.'s out-of-court statements do not implicate the Confrontation Clause.*

Not all hearsay implicates the Confrontation Clause and not all statements that implicate the clause necessarily qualify as hearsay. *State v. Williams*, 306 Kan. 175, 199, 392 P.3d 1267 (2017). Hearsay and Confrontation Clause analyses are distinct.

"[I]n a criminal proceeding, [a] first step in analyzing whether a statement is admissible hearsay is to determine whether the statement was testimonial," such as a statement made to police during interrogation. *Kelley*, 42 Kan. App. 2d at 790; see also *State v. Brown*, 285 Kan. 261, Syl. ¶ 15, 173 P.3d 612 (2007). If the statement is testimonial, the Confrontation Clause applies and the declarant must testify at the hearing for a hearsay statement to be admissible under K.S.A. 60-460(a). *Kelley*, 42 Kan. App. 2d at 790.

15

Notably, in *Ohio v. Clark*, 576 U.S. 237, 247-48, 135 S. Ct. 2173, 192 L. Ed. 2d 306 (2015), the Supreme Court of the United States concluded statements of a three-year-old child were not testimonial in nature and did not implicate the Confrontation Clause:

"Statements by very young children will rarely, if ever, implicate the Confrontation Clause. Few preschool students understand the details of our criminal justice system. Rather, '[r]esearch on children's understanding of the legal system finds that' young children 'have little understanding of prosecution.' Brief for American Professional Society on the Abuse of Children as *Amicus Curiae* 7, and n. 5 (collecting sources). And Clark does not dispute those findings. Thus, it is extremely unlikely that a 3-year-old child in L.P.'s position would intend his statements to be a substitute for trial testimony. On the contrary, a young child in these circumstances would simply want the abuse to end, would want to protect other victims, or would have no discernible purpose at all."

The Confrontation Clause applies to the states through the Fourteenth Amendment of the United States Constitution. Based on the United States Supreme Court's opinion in *Clark*, we find H.R.'s out-of-court statements did not implicate the Confrontation Clause. See *Pointer v. Texas*, 380 U.S. 400, 403, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965).

*The district court did not err in admitting the statements under the K.S.A. 60-460(dd) hearsay exception.*

Even if H.R.'s out-of-court statements meet the definition of hearsay, we find they were properly admitted under K.S.A. 60-460(dd), which permits the admission of hearsay statements during criminal proceedings when the out-of-court statement was made by a child victim. Of relevance, the statute provides:

"Evidence of a statement which is made other than by a witness while testifying at the hearing, offered to prove the truth of the matter stated, is hearsay evidence and inadmissible except:

. . . .

"(dd) . . . In a criminal proceeding . . ., a statement made by a child, to prove the crime . . . if:

16

(1) The child is alleged to be a victim of the crime or offense . . .; and

(2) the trial judge finds, after a hearing on the matter, that the child is disqualified or unavailable as a witness, the statement is apparently reliable and the child was not induced to make the statement falsely by use of threats or promises." K.S.A. 60-460(dd).

Of these elements, Morris does not challenge H.R.'s age or status as a victim. And he does not challenge whether H.R. was induced to falsely make the statement by use of threats or promises. Morris' argument focuses on subsection (dd)(2), contending the district court erred in finding H.R. was disqualified or unavailable as a witness and that she provided a reliable hearsay statement.

The Kansas Legislature defines "'[u]navailable as a witness'" to include situations, among others, where a witness is "disqualified from testifying to the matter." K.S.A. 60-459(g). Relevant here, K.S.A. 60-417 provides two avenues for disqualifying a witness:

"A person is disqualified to be a witness if the judge finds that (a) the proposed witness is incapable of expressing himself or herself concerning the matter so as to be understood by the judge and jury either directly or through interpretation by one who can understand him or her, or (b) the proposed witness is incapable of understanding the duty of a witness to tell the truth."

See *State v. Kuone*, 243 Kan. 218, 224, 757 P.2d 289 (1988) ("Under K.S.A. 60-459[g][2], a person may be unavailable as a witness where he or she has been disqualified from testifying as incompetent under K.S.A. 60-417.").

As Morris points out, the Legislature's definition of "'[u]navailable as a witness'" does not include a witness' age or inability to testify. See K.S.A. 60-459(g) (defining "'[u]navailable as a witness'" to include five situations). But our Supreme Court has held K.S.A. 60-459(g) provides an exemplary, rather than exclusive, list of situations where a witness may be found unavailable. *State v. Jefferson*, 287 Kan. 28, Syl. ¶ 3, 38, 194 P.3d

17

557 (2008) ("[T]he plain language of K.S.A. 60-459[g] permits situations other than those listed to equal witness unavailability.").

Morris acknowledges this precedent but nevertheless argues the district court's cited reasons for finding H.R. unavailable are not valid. Below, the district court directly addressed subsection (dd)(2) and found:

> "The second part under subsection (2) is after a hearing, whether the Court finds the child is disqualified or unavailable as a witness. I believe the testimony elicited here today with [H.R.], who is now five years old and was three years old at the time of her statements about the alleged sexual abuse, I do not believe it's a question that [H.R.] is not able today to understand the difference between right and wrong or truth or telling a lie, the question being that she did not recall anyone named Rick, and in looking throughout the courtroom during her testimony when [the prosecutor] asked if she recognized anyone else in the courtroom, that she presumably saw Mr. Morris and passed him and did not state that she recognized him.
>
> "The fact of her age, both at the time of the alleged incident as well as her age today, is a basis upon which to find that a child who did not remember the—as [defense counsel] rightly points out, could not recall or restate the same information in the Sunflower House interview 12 days after the initial disclosure, to expect now a five-year-old for over 18 months, going on two years now, coming into court and asking her to recall the same information, I will find that for these purposes, she is unavailable to testify."

Morris argues the district court impermissibly relied on H.R.'s age to find she was unavailable as a witness. As Morris argues, our Supreme Court has held "Kansas law does not disqualify a witness simply because of age." *State v. Thrasher*, 233 Kan. 1016, 1018, 666 P.2d 722 (1983). The *Thrasher* court explained:

> "Under K.S.A. 60-407, a witness, no matter how young, is presumed competent to testify. The burden of establishing incompetency rests on the challenger. K.S.A. 60-417, in turn, directs to the discretion of the trial court the disqualification of a witness for

18

any of the enumerated reasons. Thus, in order for a witness to be disqualified, the trial court must be convinced the witness is incapable of expressing himself concerning the matter so as to be understood by the judge and jury, or is incapable of understanding the duty of a witness to tell the truth. [Citations omitted.]" 233 Kan. at 1018.

As noted above, our Supreme Court has since determined the enumerated reasonings for disqualifying a witness under K.S.A. 60-417 is not an exhaustive list of situations. *Jefferson*, 287 Kan. at 37-38. Thus, portions of this finding are not applicable.

Nevertheless, Morris argues the district court made an error of law when it relied on H.R.'s age, rather than factors previously enumerated by our Supreme Court, to find H.R. was an unavailable witness. The Kansas Supreme Court in *Kuone* delineated four factors for courts to consider when determining unavailability to testify under K.S.A. 60-460(dd). 243 Kan. 218, Syl. ¶ 2. In *State v. Chisholm*, 245 Kan. 145, 151-52, 777 P.2d 753 (1989), the Kansas Supreme Court summarized its holding in *Kuone*:

"We recognized the defendant's right of confrontation but determined that certain factors could be used to determine whether a witness is 'unavailable,' under [K.S.A.] 60-460(dd)'s exception to the hearsay rule, because of psychological trauma or disability. The factors to be considered are: (1) the probability of psychological injury as a result of testifying; (2) the degree of anticipated injury; (3) the expected duration of the injury; and (4) whether the expected psychological injury is substantially greater than the reaction of the average victim of a rape, kidnapping, or other violent act. Other factors may also be relevant. We held there was sufficient evidence of 'unavailability' under these factors to allow the statements. [Citation omitted.]"

Although Morris argues the district court failed to consider the factors mentioned in *Kuone*, he simultaneously acknowledges that "other factors may also be relevant." See 243 Kan. 218, Syl. ¶ 2. Morris does not contend the district court was required to consider the *Kuone* factors, and he does not explain why the *Kuone* factors would be relevant here. As the State points out, the *Kuone* factors appear to be anticipatory—the

19

parties make a preemptive evaluation of the harm that could come to a child if the child was forced to testify. It is impractical to suggest the district court should have considered the "*probability* of psychological injury *as a result of testifying*" or "the degree *of anticipated injury*" when H.R. had already testified. (Emphases added.) See *Chisholm*, 245 Kan. at 151.

Morris also presents a narrow view of the district court's findings by arguing it solely relied on H.R.'s age to determine she was an unavailable witness. As stated above, the district court found H.R.'s age was one factor to be considered. And given the facts of this case, it was not unreasonable for the district court to consider H.R.'s age as a relevant factor to unavailability. The district court also considered H.R.'s failure to repeat the statement, as well as how much time had passed since she made the initial disclosure. These factual considerations are supported by the record. Mother testified H.R. repeated her statement about Morris the same night she made the initial disclosure, but H.R. has not repeated it since. H.R. did not repeat the statement during the Sunflower House interview, and she did not provide any testimony beyond identifying some friends and family when she took the stand at trial.

Morris also argues the district court made an error of fact and law when it found H.R. could not tell the difference between a truth and a lie because "it has been longstanding law in this state that '[t]he witness' capacity to perceive or remember are for the fact find[ers]—the jury—to consider in weighing the credibility of [the] testimony, but they are not bases of exclusion.'" *State v. Poulos*, 196 Kan. 253, 264, 411 P.2d 694 (1966). Upon reviewing H.R.'s testimony, Morris contends the district court's factual finding regarding H.R.'s ability to tell the difference between a truth and a lie was not supported by substantial competent evidence. See *State v. Bilbrey*, 317 Kan. 57, 63, 523 P.3d 1078 (2023) ("A judicial action constitutes an abuse of discretion if . . . it is based on an error of fact, i.e., substantial competent evidence does not support a factual finding on which a prerequisite conclusion of law or the exercise of discretion is based.").

20

Interestingly, both parties rely on the same quote by the district court to argue it came to different conclusions. As noted above, the district court found:

> "I believe the testimony elicited here today with [H.R.], who is now five years old and was three years old at the time of her statements about the alleged sexual abuse, I do not believe it's a question that [H.R.] is not able today to understand the difference between right and wrong or truth or telling a lie."

Morris relies on this statement to argue the district court's finding that H.R. did not know the difference between a truth and a lie was not supported by substantial competent evidence. But the State relies on the same statement to contend that "Judge Ryan did, in fact, find that [H.R.] knew the difference between a truth and a lie."

A review of the district court's findings does not provide definitive support for either of the parties' interpretations of the district court's findings. The district court's statement could be read as a double negative or read as the district court being certain that H.R. did not know the difference between a truth or a lie. The statement also could be read as the district court opining that it did not need to reach that question. It is not possible to know based on the district court's phrasing. In any event, both parties appear to make the same argument: that H.R. knew the difference between a truth and a lie and therefore the district court could not disqualify her as a witness under K.S.A. 60-417(b). Given neither party is arguing that H.R. was disqualified as a witness based on her incapability of understanding her duty to tell the truth, it seems unnecessary for us to make this determination on appeal.

Instead, the question becomes whether the district court made a legal or factual error when it disqualified H.R. as a witness based on subsection (a), which disqualifies a witness when the witness "is incapable of expressing himself or herself concerning the

21

matter so as to be understood by the judge and jury." K.S.A. 60-417(a). After careful review, we find the district court's decision was proper.

The record shows H.R. was unable to express herself concerning the matter so as to be understood by the judge and jury. While H.R.'s testimony showed she was capable of expressing herself in some form—she did so when she stated her name, age, and the names of her friends and family—she did not testify to anything concerning this criminal action. As the district court found, H.R. did not recall anyone by Morris' name and did not recognize Morris when prompted in the courtroom. And H.R. did not orally respond to any of these questions—she simply shook her head. Thus, the record shows H.R. was incapable of expressing herself concerning the criminal matter.

Morris' argument assumes the district court disqualified H.R. based on her inability to tell the difference between a truth and a lie, but this view of the district court's findings is too narrow. Morris' argument ignores the district court's legal authority— which was supported by substantial competent evidence based on H.R.'s testimony—to disqualify H.R. as a witness based on the child's inability to express herself on the matter. As such, Morris has not shown the district court made a legal or factual error when it disqualified H.R. as a witness under K.S.A. 60-417.

*The district court did not err in admitting testimony concerning H.R.'s out-of-court statements.*

Our Supreme Court has delineated a nonexclusive list of factors for district courts to consider when determining the reliability of a sexually abused child's statements:

> "Though not an exclusive list, factors that properly relate to whether hearsay statements made by a child witness in a child sexual abuse case are reliable include spontaneity and consistent repetition, mental state of the declarant, use of terminology unexpected of a child of similar age, and lack of motive to fabricate." *State v. Bratt*, 250

22

Kan. 264, Syl. ¶ 3, 824 P.2d 983 (1992), *overruled on other grounds by State v. Davis*, 283 Kan. 569, 158 P.3d 317 (2006).

See *State v. Mercer*, 33 Kan. App. 2d 308, 314, 101 P.3d 732 (2004) (delineating and considering some *Bratt* factors), *rev. denied* 279 Kan. 1009 (2005).

Morris relies on an earlier case, *State v. Myatt*, 237 Kan. 17, 25, 697 P.2d 836 (1985), where our Supreme Court found such determination should be made on a case-by-case basis and considering similar factors:

"The determination of reliability and trustworthiness must be made on a case-by-case basis. Such factors as the age of the child; his or her physical and mental condition; the circumstances of the alleged event; the language used by the child; the presence of corroborative physical evidence; the relationship of the accused to the child; the child's family, school, and peer relationships; any motive to falsify or distort the event; and the reliability of the testifying witness can be examined. Contrary to the defendant's argument, the statute does not allow admission of the hearsay statements of a child victim for the sole reason that the statement was made by a child. [Citations omitted.]"

Below, the district court addressed H.R.'s apparent reliability in a lengthy finding. First, the district court recited the facts it believed relevant to the reliability of the statement:

"The other two prongs of the three-prong issue under K.S.A. 60-460(dd)(2) is the reliability, apparent reliability of the statement, and the child was not induced to make the statement falsely by either threats or promises. I think the key there in the second prong is that it doesn't merely state that the statement is reliable. Add the adverb to it of describing what type of reliability, apparent reliability, and as the State argues here, the apparent reliability of this was that, according to . . . her mother, that she was not at that time when she was three in August of . . . '18, that she was not familiar with body parts. She could point to them when asked, but she did not verbally state or understand or could identify body parts, and that she knew her colors. And while [H.R.] was verbal at that age, she

23

had not ever had any indication that [she] knew about in particular here a penis. Also, [Mother] testified that she had not heard any previous statements by [H.R.] of any type of sexual nature. And then the incident itself, after coming out of the store and getting into the car, [Mother] indicated that she had bought some candy in the store, and that totally unsolicited and literally out of the blue that [H.R.]'s statement that '[Morris] said he'd give me candy if I touched his toy,' and then the follow-up question to that by mother as far as what she meant by that. "

The district court went on to apply these facts to the relevant factors to determine H.R.'s statement was apparently reliable:

"The unique nature of a child with no previous history in three years of her life having any statements that were made that were related to sex or sexual actions or parts of the body, certainly not anything to do with a penis, tend to show that the statement made by [H.R.] was apparently reliable. The fact that it was spontaneous and while not repeated over and over, [H.R.]'s apparent connection would appear to be perhaps the connection between the candy that was bought at the store with her mother and family that made her recollect the basis of which she made her statement. Her mental state at that time was in a family setting and certainly not from an inquiry by law enforcement or medical personnel or any social worker; the fact that this terminology, even referencing touching a toy, would not be in this context expected of a child that is three years old. There is no indication of any reason why [H.R.] would make this story up as shown to this point."

Morris argues the district court erred in making this finding "because there was very little, outside the spontaneous nature of the statement, that would lend it to be reliable." Instead, Morris believes the district court "appears to have fallen into a false conviction that because a child made the statement it is inherently reliable, contrary to *Myatt*'s declaration otherwise." See *Myatt*, 237 Kan. at 25 ("[T]he statute does not allow for admission of the hearsay statements of a child victim for the sole reason that the statement was made by a child.").

24

Morris' argument is not persuasive because he has not shown the district court made any sort of error. He attempts to argue the district court erred, distinguishing his case from others that have permitted hearsay statements under K.S.A. 60-460(dd). Morris contends the "'toy'" terminology used by H.R. "stands in stark contrast to the language used in other cases." See *Bratt*, 250 Kan. at 266; *State v. Clark*, 11 Kan. App. 2d 586, 587-88, 730 P.2d 1104 (1986); *State v. Wheeler*, No. 117,687, 2019 WL 166645, at *1-2 (Kan. App.) (unpublished opinion), *rev. denied* 310 Kan. 1070 (2019). And he opines that "[o]nly by assuming that [H.R.] was describing a penis does the language in the statement seem reliable."

Even though other cases may have used more explicit terms that did not require assumption to find the language was sexual in nature, Morris' reference to these cases do not show the district court made a factual error in finding H.R.'s statement was apparently reliable. As the State argues, the district court's factual findings are supported by substantial competent evidence to support its legal conclusion. And Morris' attempt to distinguish the facts of his case are not persuasive under an abuse of discretion standard.

The district court found H.R.'s statement was spontaneous, used terminology unexpected of a child that age, and was made in a family setting away from inquiry by formal parties. Mother's testimony supports this finding. According to Mother, "[W]e were in the car right after we got out of the store from getting her candy, and she just said it." As noted, Mother testified H.R. "said that [Morris] said he would give her candy if she touched his toy." And when Mother asked H.R. what Morris' toy looked like, H.R. "said long and round." The prosecutor asked Mother if anything prompted H.R. to make the statement, and Mother replied, "She had just got candy." Mother testified that prior to this statement, H.R. had not made comments of a sexual nature about Morris, and she had never described a penis as a toy.

25

The record shows the district court's factual findings are supported by substantial competent evidence, which supports its legal conclusion that H.R.'s statement was apparently reliable under K.S.A. 60-460(dd).

The district court had an adequate legal basis to find Mother's hearsay statement was admissible. See *Randle*, 311 Kan. at 476. Thus, Morris has not shown the district court made a legal or factual error in admitting Mother's hearsay testimony under K.S.A. 60-460(dd). And because Morris does not challenge the district court's decision as unreasonable, we find the district court did not abuse its discretion in admitting Mother's testimony about H.R.'s out-of-court statements. See *Levy*, 313 Kan. at 237.

*Morris' argument for application of the corpus delicti rule*

Morris additionally argues insufficient evidence requires a reversal of his conviction under the corpus delicti rule. The State argues we should refuse to consider Morris' claim for the application of the corpus delicti rule because Morris does not make a claim based on harmlessness. Alternatively, the State argues the record shows the corpus delicti rule was not violated and any error was harmless.

Our Supreme Court provided a detailed analysis of the corpus delicti rule in *State v. Dern*, 303 Kan. 384, 399-411, 362 P.3d 566 (2015), where the defendant was also convicted of aggravated indecent liberties of a child. Historically, the corpus delicti rule was applied to prevent the conviction of someone solely based on an uncorroborated confession. Courts have required some evidence, even if circumstantial, corroborating the confession of a defendant. 303 Kan. at 401-02. In Kansas, the traditional rule of corpus delicti may be bypassed by finding the confession to be trustworthy. 303 Kan. at 410.

In *Dern*, the Kansas Supreme Court found the evidentiary standard of review applicable to sufficiency of the evidence claims also applied when determining if a confession is trustworthy under the modern standard:

"The evidentiary standard for finding a confession or admission sufficiently trustworthy to satisfy the State's obligation to present a prima facie showing of the corpus delicti is akin to the standard of review applicable to sufficiency of the evidence claims—*i.e.*, it asks whether, viewed in the light most favorable to the prosecution, the totality of the circumstances is such that a rational factfinder could, considering all of the evidence, find beyond a reasonable doubt that the charged crime actually occurred. See [*State v. Cardwell*, 90 Kan. 606, 608, 135 P. 597 (1913)] (applying a sufficiency of the evidence standard). It must be noted that the State carries a higher burden when establishing the corpus delicti through a trustworthy confession than it otherwise would if establishing the corpus delicti through the traditional means of evidence entirely independent of the defendant's statements. See, e.g., *State v. Waddell*, 255 Kan. 424, 433, 874 P.2d 651 (1994) (When applying the formal corpus delicti rule, the State's burden is met if 'there is some evidence which renders the corpus delicti more probable than it would be without the evidence.') (quoting *State v. Bradford*, 254 Kan. 133, 139, 864 P.2d 680 [1993])." *Dern*, 303 Kan. at 411.

The *Dern* court set forth a nonexclusive list of factors that could be considered in determining the trustworthiness of a confession:

"A determination of the trustworthiness will depend on the totality of the circumstances and may include a consideration of the following nonexclusive factors or indicia of reliability: (1) independent corroboration of details or specific facts contained in the confession; (2) the number of times the confession was made and the consistency or lack thereof between different versions of the confession; (3) the circumstances of the confession, including the identity of the person or persons to whom the confession was made and the state of mind of the defendant at the time of the confession; (4) the availability of the facts or details contained in the confession from sources outside the defendant's personal knowledge; (5) the defendant's age, education, experience, and mental health; and, (6) if the confession was made to law enforcement, then the overall fairness of

the exchange including whether there was deception, trickery, undue pressure or excessive length." 303 Kan. at 410-11.

But the *Dern* court applied the trustworthiness rule to the defendant's case and found the totality of the circumstances supported a finding that the defendant's statements to police officers were sufficiently trustworthy to permit corpus delicti of the charged crime to be shown through those statements. 303 Kan. at 411-12.

The State contends Morris fails to support his request to vacate his conviction based on the corpus delicti rule with any pertinent authority. Nor does he show why his request to vacate is sound despite a lack of supporting authority. See *State v. Meggerson*, 312 Kan. 238, 246, 474 P.3d 761 (2020) (failing to support a point with pertinent authority or failure to show why a point is sound despite a lack of supporting authority or in the face of contrary authority is like failing to brief the issue).

Generally, an erroneous admission or exclusion of evidence is subject to review for harmlessness under K.S.A. 2023 Supp. 60-261. *State v. Lowery*, 308 Kan. 1183, 1235, 427 P.3d 865 (2018). Under K.S.A. 2023 Supp. 60-261, courts must disregard all errors that do not affect a party's substantial rights:

> "Unless justice requires otherwise, no error in admitting or excluding evidence, or any other error by the court or a party, is ground for granting a new trial, for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order. At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights."

Our Supreme Court considered a similar claim applying the harmless error standard in *State v. Noah*, 284 Kan. 608, 162 P.3d 799 (2007). In *Noah*, the district court preemptively disqualified the child victim as a witness and found the victim's hearsay statements to her family were admissible under K.S.A. 60-460(dd). The Kansas Supreme

28

Court found the district court erred in admitting the victim's statements because it violated the defendant's right to confrontation. 284 Kan. at 618-19. Notably, this was before the guidance in *Clark*, 576 U.S. at 247-48, that statements by very young children would not violate the federal Confrontation Clause. The *Noah* court concluded the erroneous admission "was not harmless" because "we cannot conclude beyond a reasonable doubt that the error had little effect on the result of the trial." 284 Kan. at 619. Ultimately the *Noah* court disposed of the claim by reversing the defendant's convictions and remanding the matter for a new trial. 284 Kan. at 619.

Morris does not submit a claim for relief under a harmlessness standard, and instead, requests a disposition unsupported by, and contrary to, Kansas precedent. As such, he does not present an argument for relief which the panel could grant. See *Meggerson*, 312 Kan. at 246.

But even if Morris had submitted an argument under harmlessness, the State, as the party benefiting from the error, has shown beyond a reasonable doubt that the error would not or did not affect the outcome of the trial in light of the entire record. See *Williams*, 306 Kan. at 202-03. As the State explains, the jury also heard H.R.'s statement prior to Mother's testimony when Detective Hays repeated the statement during his testimony and during his interview with Morris. At the start of his testimony, Detective Hays stated he received a report that indicated "on August 17th . . . [Mother]'s daughter had made a disclosure to her at Price Chopper. And this is [H.R.] had made the disclosure that Rick had offered her candy to touch his toy." Detective Hays testified the report also indicated "that the description of the toy from [H.R.] to her mother was that it was long and round."

Then when the interview was published to the jury, the jury heard Detective Hays inform Morris that he wanted to speak with him because "on August 17th . . . [H.R.] went to the grocery store with her mom . . . and made the comment that . . . Rick asked her to

29

touch his toy in exchange for some candy." And the jurors heard Detective Hays tell Morris that H.R. described the toy as "long and round." During the same interview, the jury also heard Morris admit to telling H.R. his penis was his toy when H.R. asked what it was. And they heard him admit to H.R. touching his bare penis, which he initially stated only lasted a second, then later claimed it was less than one minute.

In addition, Morris himself testified to the statement when prompted by defense counsel on direct examination. Defense counsel stated: "Let's talk about the words you used. . . . Detective Hays mentions to you [H.R.]'s statement to her mother. Specifically, he says to you, 'She made the comment that Rick asked her to touch his toy in exchange for candy.'" Morris testified to remembering the conversation, denied knowing what H.R. meant by her statement, and admitted to offering H.R. candy in exchange for her silence about smoking cigarettes.

Thus, even without Mother's testimony regarding H.R.'s statement, the jury still heard evidence that H.R. made the specific statement that Morris offered her candy in exchange for touching his toy and that she described the toy as long and round. Any error in admitting H.R.'s statement to Mother was harmless.

Alternatively, after careful review of the entire record and consideration of the totality of the circumstances, we have no difficulty concluding that Morris' confessions were supported by sufficient indicia of reliability to permit the charged crime to be shown through his statements.

II. *Did the prosecutor commit reversible error?*

In his second issue on appeal, Morris contends the prosecutor committed reversible error by misstating the law regarding the hearsay exception during the district court's mid-trial hearing on the admissibility issue. The State argues the prosecutor did

not err in stating most of the law during the hearing but concedes the prosecutor did misstate the burden of proof. Even so, the State argues the prosecutor's error was harmless.

Morris specifically argues the prosecutor misstated the law with her "apparent conflation of not available for cross-examination as used in K.S.A. 60-460(a) with 'unavailable as a witness' as that term is defined in K.S.A. 60-459 and used in K.S.A. 60-460(dd)." And he argues the prosecutor's reliance on *State v. Lomax & Williams*, 227 Kan. 651, 655, 608 P.2d 959 (1980), and *State v. Osby*, 246 Kan. 621, 793 P.2d 243 (1990), was misplaced because those cases analyze K.S.A. 60-460(a) and do not consider the unavailability of a witness under K.S.A. 60-460(dd). Finally, Morris contends, and the State concedes, the prosecutor misstated the burden of proving H.R.'s unavailability.

Preliminarily, Morris admits he did not object to the prosecutor's alleged errors when she made them below, but he argues our Supreme Court "has not taken a position as to whether any objection is required to preserve a claim of prosecutorial error in a nonjury setting." Accordingly, Morris argues an objection is not required for us to consider his claim.

As he argues, our Supreme Court opined on the existence of this issue in *State v. Wilson*, 309 Kan. 67, 73, 431 P.3d 841 (2018), but it did not consider the issue because the State did not raise the preservation claim in its petition for review:

> "At the outset we must consider whether Wilson's prosecutorial error challenge is preserved for our review. On appeal, the State pointed out Wilson did not object to the alleged misstatements during the hearing, so it argued the issue was not properly preserved. The panel rejected this contention because a contempora[neous] objection is not required to claim prosecutorial error during closing argument before a jury, so it reasoned that principle should extend to Wilson's sentencing proceeding before the judge. [*State v. Wilson*, No. 114,567, 2016 WL 7324427, at *4 (Kan. App. 2016) (unpublished

31

opinion)]; see also *State v. Miller*, 293 Kan. 535, 550, 264 P.3d 461 (2011) (while a contempora[neous] objection is required for review of an evidentiary prosecutorial error claim, it is unnecessary to consider prosecutorial error during closing argument).

"In its petition for review, the State identified one issue for this court to take up: Whether the prosecutor committed reversible error at the hearing on the State's motion to correct illegal sentence? This advances only a merits based challenge to the prosecutorial error question. As a result, we hold the State waived review of the panel majority's conclusion on preservation. . . . We express no opinion whether a contemporaneous objection or other posthearing remedial motion is required to appeal a prosecutorial error claim arising from a nonjury setting."

The State does not argue against our ability to consider this claim on appeal, despite Morris' lack of objection. Relying on this court's decision in *Wilson*, the State agrees we can consider Morris' prosecutorial error claim for the first time on appeal.

As this court held in *Wilson*, other panels have addressed claims of prosecutorial misconduct for statements made before a judge at preliminary hearings or sentencing. *Wilson*, 2016 WL 7324427, at *4; see *State v. Serrano-Garcia*, No. 103,651, 2011 WL 4357804, at *3-4 (Kan. App. 2011) (unpublished opinion) (sentencing); *State v. Roland*, No. 101,879, 2010 WL 1078454, at *1-3 (Kan. App. 2010) (unpublished opinion) (sentencing); *State v. Clelland*, No. 93,001, 2005 WL 1805250, at *3-5 (Kan. App. 2005) (unpublished opinion) (preliminary hearing).

In each of these cases, the panel considered whether the prosecutorial misconduct standard that traditionally applies in jury trials should apply to nonjury settings. Ultimately, the *Wilson* court held the traditional analysis should be applied to determine whether the prosecutor erred by misstating facts during a hearing on the State's motion to correct an illegal sentence. 2016 WL 7324427, at *4.

32

Morris has persuasively argued this court can consider his prosecutorial error claim despite his lack of objection below.

*Any prosecutorial error was harmless.*

Appellate courts use a two-step process to evaluate claims of prosecutorial error: error and prejudice. *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016).

> "To determine whether prosecutorial error has occurred, the appellate court must decide whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial. If error is found, the appellate court must next determine whether the error prejudiced the defendant's due process rights to a fair trial. In evaluating prejudice, we simply adopt the traditional constitutional harmlessness inquiry demanded by *Chapman* [*v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)]. In other words, prosecutorial error is harmless if the State can demonstrate 'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, i.e., where there is no reasonable possibility that the error contributed to the verdict.' [Citation omitted.]" 305 Kan. at 109.

See also *State v. Fraire*, 312 Kan. 786, 791-92, 481 P.3d 129 (2021).

The statutory harmlessness test also applies to prosecutorial error, but when analyzing both constitutional and nonconstitutional error, appellate courts only need to address the higher standard of constitutional error. *Sherman*, 305 Kan. at 109.

Morris makes two claims of prosecutorial error. First, he argues the prosecutor misstated the law by conflating circumstances that would render a witness not available for cross-examination, as used in K.S.A. 60-460(a), with circumstances that render a child "disqualified or unavailable as a witness" under K.S.A. 60-460(dd). Morris believes

33

the prosecutor's reliance on Kansas precedent analyzing K.S.A. 60-460(a) was inappropriate "[i]n confusing the concepts of unavailable as a witness and not available for cross-examination, and then relying only upon that basis, the prosecution misstated the law."

Morris' first claim of prosecutorial error is not persuasive. The prosecutor did not misstate the law when she compared the subsections of K.S.A. 60-460. Instead, the prosecutor analogized the terms as used in each subsection by comparing other circumstances where witnesses are found unavailable. And certain cases included those where an alleged unavailable witness made a previous statement. See *Osby*, 246 Kan. 632-33; *Lomax & Williams*, 227 Kan. at 658, 661-62. The prosecutor used analogous Kansas precedent to support her argument for the introduction of the hearsay statement. As the State persuasively points out, "This is, fundamentally, what attorneys do."

Second, Morris argues the prosecutor committed error when she misstated her burden to prove H.R.'s unavailability as a witness. The State concedes this error. But regardless of the State's concession on appeal, the transcript shows the prosecutor did not necessarily misstate the burden.

At the hearing, the prosecutor appeared to argue Morris bore the burden of proving H.R. should not be disqualified. If the prosecutor did make this argument, then it would be a misstatement of the law. As the party seeking to introduce the statement of the unavailable witness under K.S.A. 60-460(dd) at trial, the State had the burden to prove the foundation of the addition of those hearsay statements. See *State v. Johnson-Howell*, 255 Kan. 928, 935, 881 P.2d 1288 (1994), *abrogated on other grounds by State v. Jefferson*, 287 Kan. 28, 194 P.3d 557 (2008). As such, an improper burden comment by the State would be outside of the wide latitude afforded to prosecutors. See *Sherman*, 305 Kan. at 109.

During the mid-trial hearing, the prosecutor seemed to fumble around the burden. At first, she stated the burden was on Morris. But in the next sentence, she seems to acknowledge the State's burden based on it being the party who sought to introduce the hearsay statements:

> "The burden is usually on—in this case it would be on the Defense, defendant; however, the State has brought it up, Your Honor, so we're not interrupting testimony, we can make a proffer, too, of evidence that would be elicited and do have a witness on the stand who the statement was made to."

That said, the district court immediately replied with a statement seeming to suggest that it believed Morris had some sort of burden:

> "Don't we need to go into at least some information from what I understand would be [Mother]'s testimony as to what [H.R.] told her to determine whether or not it was reliable in any sense or it wasn't coerced in some way and then—
>
> . . . .
>
> "—give the Defense a chance to cross-examine. I understand that part is defendant's burden, but I think we've only touched on one of those three elements under the statute as far as hearsay exception for allowing testimony as to what [H.R.] told other people."

But despite making the vague statement about Morris' burden, the district court did not act like it believed Morris carried any burden. Instead, it found the hearsay statements had been previously introduced through the interview between Detective Hays and Morris when Detective Hays told Morris about the statements made by H.R. and then asked Morris if he was aware of the statements. The court simultaneously ordered the State to make a proffer as to the reliability of H.R.'s statements and granted the State permission to elicit testimony from Mother. And after Mother testified, the State made a detailed argument and concluded, "I think the victim is unavailable as the Court has seen,

35

and we're asking for [the statement] to be admitted." In response, Morris' counsel made a brief argument contending H.R.'s statement was not reliable.

A review of the transcript shows the parties seemed confused about who bore the burden of proof—the words of the judge and the prosecutor would suggest that the prosecutor misstated the burden. But the actions of the judge and the prosecutor show both seemed to know the State bore the burden of showing H.R. was an unavailable witness.

But regardless, even if the panel assumes the prosecutor erred, the State has shown there is no reasonable possibility that the prosecutor's error contributed to the verdict. See *Sherman*, 305 Kan. at 109.

The Kansas Supreme Court has held "[t]he trial court is presumed to know the law." *State v. Johnson*, 258 Kan. 61, 65, 899 P.2d 1050 (1995). In *Johnson*, the defendant was convicted at a bench trial, then argued the trial court erred by failing to consider lesser included offenses. The *Johnson* court was not convinced: "Even if the evidence had supported instructions on lesser included offenses in a jury trial, the trial court is presumed to have followed such instructions in a bench trial." 258 Kan. at 65.

More recently, this court distinguished *Johnson* when it found a prosecutor's error was not harmless in *Wilson*. 2016 WL 7324427, at *8. Like Morris, the defendant in *Wilson* argued the prosecutor erred during a nonjury hearing. The panel cited the presumption from *Johnson* but distinguished that rule from Wilson's claim because the prosecutor's misstatement of facts misled the judge. The *Wilson* panel reasoned:

> "We find no case applying that premise in circumstances comparable to this case—to vest a district court with constructive knowledge that the crucial facts of an unreported decision of the Court of Appeals are nothing like what the State represents them to be. A

36

district court can reasonably be misled by such conduct, just as a jury may be." 2016 WL 7324427, at *8.

The panel ultimately found the district court would have found differently if the prosecutor had "compared the actual facts in Wilson's case to the actual facts in [the case relied on by the State]." 2016 WL 7324427, at *9.

But as the State argues, the prosecutor's alleged errors here did not misstate the facts. Instead, assuming Morris' argument is correct, the prosecutor made a misstatement of the law by inaccurately stating the State's burden. But unlike *Wilson*, there is no indication here that the district court was misled by the prosecutor's alleged erroneous conduct. As noted, the parties acted as if the State carried the burden. If the prosecutor and district court believed Morris carried any burden of proof under this issue, then neither behaved accordingly—the district court focused the proceedings on the State's arguments, proffers, and elicited testimony. Whereas Morris' defense counsel barely participated in the admissibility proceedings. Defense counsel briefly objected "to any hearsay," then asked Mother a single question on cross-examination. And defense counsel's closing argument was minimal in comparison to the State's lengthy argument.

Given the actions of all parties, there is no reasonable possibility that the prosecutor's error contributed to the verdict. See *Sherman*, 305 Kan. at 109. If the prosecutor had correctly stated its burden, then the district court would have conducted the hearing in the same manner and come to the same conclusion. We have already concluded the district court did not err when it found H.R.'s statements admissible based on her unavailability as a witness. As such, the prosecutor's alleged error in misstating the burden was harmless because there is no reasonable possibility that the prosecutor's error contributed to the verdict. See *Sherman*, 305 Kan. at 109.

37

As noted above, any error in admitting H.R.'s statement was harmless. Thus, even if the prosecutor did err in presenting an argument on this issue, the error ultimately would be harmless for the same reasons.

## III. *Does KORA violate Morris' rights?*

For the first time on appeal, Morris argues the Kansas offender registration scheme violates his rights under the First Amendment to the United States Constitution: "Specifically, the registration process compels him to speak at the government's behest, and K.S.A. 22-4907 denies him the ability to speak anonymously." He also claims KORA violates his equal protection rights under the Fourteenth Amendment because it treats some offenders differently than others.

The State argues we should refuse to consider Morris' challenges to KORA because they are not preserved for appellate review. Alternatively, the State presents a merits argument to both claims, arguing we should affirm KORA and Morris' registration.

### *Preservation*

Morris concedes he did not object to the district court's registration order when it was imposed below. Generally, constitutional issues not raised before the district court cannot be raised on appeal. *State v. Valdez*, 316 Kan. 1, 10, 512 P.3d 1125 (2022). But as Morris argues, appellate courts recognize several exceptions to this general rule. See *State v. Harris*, 311 Kan. 371, 375, 461 P.3d 48 (2020) (listing exceptions to general rule that new legal theory may not be raised for first time on appeal). Morris argues two of these exceptions apply here.

38

First, he contends his KORA challenge presents solely a legal question that requires "no other factual development." See *State v. Boettger*, 310 Kan. 800, 803, 450 P.3d 805 (2019) ("Issues about the constitutionality of a statute present questions of law over which this court has unlimited review."). Second, Morris argues this court should consider his claim because it involves fundamental rights protected by the First Amendment. See *State v. Jones*, 313 Kan. 917, 933, 492 P.3d 433 (2021) (recognizing freedom of speech as fundamental right).

But the decision to review an unpreserved claim under any recognized exception is a prudential one, and an appellate court has no duty to consider an unpreserved issue for the first time on appeal. *State v. Genson*, 316 Kan. 130, 135-36, 513 P.3d 1192 (2022), *cert. denied* 143 S. Ct. 1092 (2023); see also *State v. Gray*, 311 Kan. 164, 170, 459 P.3d 165 (2020) (declining to reach unpreserved claim and finding failure to present argument to district court "deprived the trial judge of the opportunity to address the issue in the context of this case and such an analysis would have benefitted our review").

Multiple panels of this court within the last two years have declined to review this same constitutional claim for the first time on appeal. See *State v. Spilman*, 63 Kan. App. 2d 550, 575, 534 P.3d 583 (collecting cases), *rev. denied* 317 Kan. 850 (2023); *State v. McMillin*, No. 125,589, 2023 WL 8520701, at *2-3 (Kan. App. 2023) (unpublished opinion), *petition for rev. filed* January 8, 2024; *State v. Harpe*, No. 124,732, 2023 WL 5992237, at *8 (Kan. App. 2023) (unpublished opinion), *rev. denied* 318 Kan. ___ (2024); *State v. Miller*, No. 125,213, 2023 WL 5811770, at *5 (Kan. App. 2023) (unpublished opinion), *petition for rev. filed* October 10, 2023.

As to Morris' claim that his facial challenge would not require additional factual development, panels have rejected this argument by finding review of a facial challenge to KORA would require consideration of several unresolved factual questions:

"Identifying the compelling governmental interests KORA is meant to protect and then determining whether it is sufficiently narrowly tailored to serve those interests involves examining a host of issues best explored first at the district court level. Analyzing the proportionality of KORA requires an in-depth balancing of its benefits and costs, along with exploring potential alternatives to achieving those benefits and the accompanying costs and anticipated effectiveness of those alternatives. It may even involve evaluating KORA's effectiveness in protecting the compelling governmental interests it is meant to serve, which could involve the presentation of evidence and factfinding. And '[f]act-finding is simply not the role of appellate courts.' *State v. Nelson*, 291 Kan. 475, 488, 243 P.3d 343 (2010) (citing *State v. Thomas*, 288 Kan. 157, 161, 199 P.3d 1265 [2009])." *State v. Pearson*, No. 125,033, 2023 WL 2194306, at *1 (Kan. App. 2023) (unpublished opinion), *rev. denied* 318 Kan. ___ (2024).

In *Spilman,* the panel found that even if it assumed KORA registration constitutes compelled speech under the First Amendment to the United States Constitution, the panel would nevertheless be required to improperly develop facts outside of the appellate record under the strict scrutiny standard:

"Even if we were to agree with Spilman that KORA registration constitutes compelled speech within the meaning of the First Amendment to the United States Constitution, the restrictions on Spilman's First Amendment rights are unconstitutional only if those restrictions cannot survive strict scrutiny. See *Turner Broadcasting System, Inc. v. FCC*, 512 U.S. 622, 642, 114 S. Ct. 2445, 129 L. Ed. 2d 497 (1994) ('Laws that compel speakers to utter or distribute speech bearing a particular message are subject to the same rigorous scrutiny' as laws that 'suppress, disadvantage, or impose differential burdens upon speech because of its content.'); *U.S.D. No. 503 v. McKinney*, 236 Kan. 224, 235, 689 P.2d 860 (1984). Strict scrutiny requires the State to demonstrate a compelling government interest justifying the restriction on the fundament[al] right in a way that is narrowly tailored to achieve that interest. See *Hodes & Nauser, MDs v. Schmidt*, 309 Kan. 610, 680, 440 P.3d 461 (2019). Those considerations require the development of facts outside our appellate record. Thus, we decline from Spilman's invitation to consider this issue for the first time on appeal." *Spilman*, 63 Kan. App. 2d at 575-76.

The *Spilman* panel refused to consider the defendant's claim under the Equal Protection Clause for the same reason, finding his equal protection claim requires additional fact-finding by invoking rational basis scrutiny:

> "Under the rational basis test, similarly situated individuals may be treated differently without violating equal protection so long as the classification used to distinguish them bears a rational relationship to a legitimate governmental objective. '[A] classification will survive a challenge based on equal protection "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification."' *Crawford v. Kansas Dept. of Revenue*, 46 Kan. App. 2d 464, 471, 263 P.3d 828 (2011) (quoting *FCC v. Beach Communications, Inc*., 508 U.S. 307, 313, 113 S. Ct. 2096, 124 L. Ed. 2d 211 [1993]). It is not sufficient to point to one set of facts in which the classification does not advance the government interest. The party challenging the classification bears the onerous burden of negating every reasonable basis that might support the classification. *Crawford*, 46 Kan. App. 2d at 471-72." *Spilman*, 63 Kan. App. 2d at 576.

See also *Harpe*, 2023 WL 5992237, at *9 (refusing to consider KORA equal protection claim); *Miller*, 2023 WL 5811770, at *6 (same).

The prior panels' reasoning is sound, and all the same is true here. Examination of Morris' claims would require further factual development beyond the appellate record. And given our Supreme Court has denied petitions for review on these claims, it would seem the Kansas Supreme Court does not disagree with this court's discretion in refusing to consider these claims for the first time on appeal.

Morris submits one argument regarding preservation that has been raised and denied by the Kansas Supreme Court in a petition for review. He contends we should consider his unpreserved constitutional challenge based on the United States Supreme Court's decision in *303 Creative LLC v. Elenis*, 600 U.S. 570, 143 S. Ct. 2298, 216 L. Ed. 2d 1131 (2023). In that case, a wedding website designer moved for an injunction to

41

prevent the state of Colorado from compelling her to create websites or design services that were inconsistent with her religious beliefs. The district court declined the injunction and entered summary judgment for the defendants. The United States Court of Appeals for the Tenth Circuit affirmed the decision, but the United States Supreme Court reversed, holding the First Amendment prohibits compelling a person "to speak [the government's] message when he would prefer to remain silent or to force an individual to include other ideas with his own speech that he would prefer not to include." 600 U.S. at 586.

Morris interprets *303 Creative* to argue "the United States Supreme Court has found the dangers inherent in compelled speech serious enough that it reached a compelled speech challenge prospectively, even before any person had been compelled to speak."

The defendant in *McMillin* made this same argument and has since filed a petition for review. On appeal to this court, the panel was not persuaded *303 Creative* was applicable to reach McMillin's unpreserved claim because the procedural posture was distinguishable from these appeals challenging KORA. First, the panel reasoned the underlying issue in *303 Creative*—standing to bring a declaratory, pre-enforcement action to enjoin the State from compelling speech—was inapplicable to the KORA claim. 2023 WL 8520701, at *3. In fact, the *McMillin* panel reasoned that *303 Creative* "serves as a compelling reason *not* to reach the merits of McMillin's KORA challenge" because unlike in these Kansas appeals challenging KORA, the parties in *303 Creative* stipulated to several facts that were necessary to address the constitutional arguments presented. 2023 WL 8520701, at *3; see *303 Creative*, 600 U.S. at 582 (listing and applying stipulations).

42

Second, the *McMillin* panel refused to consider the defendant's unpreserved claim based on *303 Creative* because the defendant did "nothing to explain how its holding may apply here." 2023 WL 8520701, at *3.

We find the reasoning in *McMillin* to be sound. Morris does not explain how *303 Creative* supports his argument, nor does he explain why his brief argument to this point is sound in the face of the contrary authority. See *Meggerson*, 312 Kan. at 246 (failing to support a point with pertinent authority or failure to show why a point is sound despite a lack of supporting authority or in the face of contrary authority is like failing to brief the issue). Morris simply suggests *303 Creative* permits appellate review of prospective challenges to compelled speech without providing any explanation as to why the holding of that case would be applicable to the procedural posture and undeveloped factual circumstances here.

For these reasons, we find the challenges to KORA should not be addressed for the first time on appeal. See *Spilman*, 63 Kan. App. 2d at 576-77; *McMillin*, 2023 WL 8520701, at *3; *Harpe*, 2023 WL 5992237, at *8-9.

Affirmed.